UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
| )  | Case No. 3:18-cv-787-KAD |
| Plaintiff,      ) | |
| )  | |
| v.         ) | |
| )  | |
| ZVI KAUFMAN,        ) | |
| )  | |
| Defendant.      ) | |
| ) | |

**CONSOLIDATED LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED
MATERIAL FACTS AND LOCAL RULE 56(a)(2) STATEMENT FACTS
IN OPPOSITION TO SUMMARY JUDGMENT**

Defendant Zvi Kaufman files this Consolidated Statement of Undisputed Material Facts and Statement of Facts in Opposition to Summary Judgment, pursuant to Local Rule 56(a).

### I. Undisputed Material Facts in Support of Defendant Kaufman's Partial Motion for Summary Judgment

Defendant's Motion for Partial Summary Judgment turns on a pure issue of law: whether the $10,000 limitation to the non-willful FBAR applies per untimely filed form or per untimely disclosed account. Accordingly, the only material fact necessary for the Court's decision is as follows:

1. The Government's Complaint seeks to reduce to judgment "$42,249 in penalties for 11 accounts Kaufman failed to report in 2008, $42,287 in penalties for 10 accounts that Kaufman failed to report in 2009, and $59,708 in penalties for 15 accounts Kaufman failed to report in 2010." But for each of tax years 2008, 2009, and 2010, Defendant failed to timely file only one FBAR form. [DE 1 at ¶14.]

{00148710.2 }                         1

## II.     Facts in Opposition to the Government's Motion for Summary Judgment

   A.     *Response to the Government's Statement [DE 64-1]*

1.     Defendant Zvi Kaufman is a United States citizen and was a United States citizen during the calendar years 2007, 2008, and 2009. *See* (Doc. 1), at ¶ 7; (Doc. 26) at ¶ 7;*see also* Plaintiff's Exhibit ("P. Ex.") A, at ¶¶ 1-3.

   **Admitted.**

2.     Defendant Zvi Kaufman had a financial interest in, or signatory authority over, financial accounts in Israel during tax years 2008, 2009, and 2010. See P. Ex. A, at ¶¶ 4-6.

   **Admitted.**

3.      During tax year 2008, Mr. Kaufman had accounts at the following financial institutions, all of which were located in Israel, the last four digits of the account numbers of which and the high balances of which were, as follows:

| **Financial Institution** | **Last 4 Digits of Account Number** | **High Balance** |
|---|---|---|
| Clal Insurance Ltd. | 7163 | $775,901 |
| Helman Alduvi Gemmel | 3989 | $2,307 |
| Harel Gemmel Ltd. | 0117 | $13,247 |
| Migdal Insurance Co. | N/A | $51,927 |
| Altschuler Schacham Keren Histalmut | 8729 | $103,540 |
| Midgal Sherute Bursa, ltd. | 1987 | $4,831 |
| DS Gemmel & Pitzuim | 8675 | $69,417 |
| Migdal Gemmel Platinum Ltd. | N/A | $2,097 |
| Psagot Investment House (jointly held) | 0167 | $533,084 |
| Bank Leumi (jointly held securities account) | 7592NIS | $290,680 |
| Bank Leumi (jointly held foreign exchange account | 7592FOREX | $455,183 |
| Bank-Leumi (jointly held bank account) | 7592 | $82,239 |

P. Ex. A ¶ 13, 17 (admitting that P. Ex. B accurately reflects the FBAR form that Mr. Kaufman filed with the IRS on May 15, 2012 regarding tax year 2008); P. Ex. B; Declaration of Anton Pukhalenko ("Pukhalenko Decl.") at ¶ 2.

**Admitted.**

4. During tax year 2009, Mr. Kaufman had accounts at the following financial institutions, all of which were located in Israel, the last four digits of the account numbers of which and the high balances of which were, as follows:

| Financial Institution | Last 4 Digits of Account Number | High Balance |
|---|---|---|
| Clal Insurance Ltd. | 7163 | $909,399 |
| Helman Alduvi Gemmel | 3989 | $3,422 |
| Harel Gemmel Ltd. | 0117 | $17,235 |
| Migdal Insurance Co. | N/A | $89,718 |
| Excellence | 2032 | $161,215 |
| Altschuler Schacham Keren Histalmut | 8729 | $146,882 |
| Migdal Gemmel Platinum Ltd. | 3203 | $2,212 |
| DS Gemmel & Pitzuim | 8675 | $69,417 |
| Psagot Investment House (jointly held) | 0167 | $722,182 |
| Bank Leumi (jointly held securities account) | 7592NIS | $473,920 |
| Bank Leumi (jointly held foreign exchange account) | 7592FOREX | $475,821 |
| Bank-Leumi (jointly held bank account) | 7592 | $98,186 |

P. Ex. A ¶ 14, 18 (admitting that P. Ex. C. accurately reflects the FBAR form that Mr. Kaufman filed with the IRS on May 15, 2012 regarding tax year 2009); P. Ex. C; Pukhalenko Decl. at ¶ 2.

**Admitted.**

5. During tax year 2010, Mr. Kaufman had accounts at the following financial institutions, all of which were located in Israel, the last four digits of the account numbers of which and the high balances of which were, as follows:

| Financial Institution | Last 4 Digits of Account Number | High Balance |
|---|---|---|
| Clal Insurance Ltd. | 7163 | $1,021,027 |
| Helman Alduvi Gemmel | 3989 | $3,690 |
| Harel Gemmel Ltd. | 0117 | $18,671 |
| Migdal Insurance Co. | N/A | $103,585 |
| Excellence | 2032 | $180,741 |
| Altschuler Schacham Keren Histalmut | 8729 | $157,342 |
| Psagot Keren Hishtalmut | 9677 | $168,206 |
| DS Gemmel & Pitzuim | 8675 | $103,274 |
| Psagot Retirement Funds Ltd. | 9532 | $3,912 |
| Psagot Retirement Funds Ltd. | 9672 | $18,671 |
| Psagot Retirement Funds Ltd. | 9642 | $103,755 |
| Altschuler Shacham Keren Hishtalmut | 3298 | $2,142 |
| Psagot Investment House (jointly held) | 0167 | $1,087,657 |
| Bank Leumi (jointly held securities account) | 7592NIS | $567,639 |
| Bank Leumi (jointly held foreign exchange account) | 7592FOREX | $47,235 |
| Bank-Leumi (jointly held bank account) | 7592 | $249,888 |
| Excellence | 6208 | $293,766 |

P. Ex. A ¶ 15, 19 (admitting that P. Ex. D. accurately reflects the FBAR form that Mr. Kaufman filed with the IRS on May 15, 2012 regarding tax year 2010); P. Ex. D. Thus, during 2008, 2009, and 2010, the aggregate balance of Mr. Kaufman's foreign financial accounts exceeded $10,000. P. Ex. A, at ¶¶ 4-6; P. Ex. B-D; Pukhalenko Decl. at ¶ 2.

    **Admitted**

    6.    Mr. Kaufman did not timely file FBARs to report his foreign financial accounts for tax years 2008, 2009, and 2010; he did not file any FBARs to report his foreign accounts until May 2012. See P. Ex. A, ¶ 10-15, P. Ex. B-D; Pukhalenko Decl. at ¶ 2.

    **Admitted.**

7.      On September 24, 2015, the IRS assessed three FBAR penalties against Mr. Kaufman for the calendar years 2008, 2009, and 2010: $42,249 for 2008, $42,287 for 2009, and $59,708 for 2010. See P. Ex. E, "Forms 13448 Penalty Assessment Certifications (Title 31 'FBAR')," accompanied by a "Certificate of Official Record" dated January 5, 2017.   The penalty amounts, were calculated in accordance with Internal Revenue Manual 4.26.16 and were approved by IRS Chief Counsel, as required at the time the penalties were proposed under Internal Revenue Manual 4.26.17.4.3.  Pukhalenko Decl. at ¶ 3-4.

**Admitted, except with regards to the assertion that the amounts were not properly calculated per Internal Revenue Manual 4.26.16. The Government's cited support for this proposition is not adequate to support summary judgment and is accordingly objectionable under Local Rule 56(c).**

8.      At or near the time the FBAR penalties were assessed, the IRS sent a letter to Mr. Kaufman demanding payment for the FBAR penalties. See P. Ex. F, Declaration of Debt, dated December 6, 2019, at ¶ 3. Mr. Kaufman owes $144,244.00 on the principal for the outstanding FBAR penalties, $36,373.20 for a late-payment (or "delinquency") penalty, and $6,062.20 for interest, as of December 6, 2019. See id., at ¶ 4.  Interest and delinquency penalties continue to accrue from and after December 6, 2019.

**Admitted as to the first sentence. With regards to the rest of this paragraph, it is unsupported by the record citation and therefore objectionable under Local Rule 56(c).**

### III.    Additional Material Facts

1.      Defendant Kaufman acted with "reasonable cause" in failing to timely file his FBAR forms. [Kaufman Affidavit ¶¶1–29.]

2.      Defendant Kaufman is 69 years old. [Kaufman Affidavit ¶1.]

3. Since 1979 Defendant Kaufman has lived and worked in Israel. [Kaufman Affidavit ¶2.]

4. On or around May 15, 2012, Defendant Kaufman filed delinquent FBAR forms for Tax Years 2008, 2009, and 2010. Copies of these forms are attached to the Government's Motion [DE 64-5 through DE 64-7]. These FBAR forms accurately describe the non-U.S. financial accounts over which Defendant Kaufman had control in each of the relevant years. Defendant Kaufman maintained these accounts for ordinary business and personal finance purposes. The majority are in fact pension accounts created by his employers over the years. They were not created to hide assets from the United States Government or anyone else. [Kaufman Affidavit ¶3.]

5. Defendant Kaufman failed to timely file FBAR forms for Tax Years 2008, 2009, and 2010 because he did not know that he was required to do so. [Kaufman Affidavit ¶4.]

6. At all times, however, Defendant Kaufman exercised ordinary business care. Defendant Kaufman did not neglect his United States regulatory reporting obligations. [Kaufman Affidavit ¶5.]

7. Since at least 1974, Defendant Kaufman hired a United States CPA, Larry Foss, and his firm (collectively, "CPA Foss") to advise him on what forms he was required to file with the IRS, to prepare those forms, and to assist Defendant Kaufman in filing them. This included not only Defendant Kaufman's Form 1040 Ordinary Income Tax Return, but any other return or report that the IRS required. Although obviously Defendant Kaufman did not know of the FBAR requirement at the time, this included an obligation to inform Defendant Kaufman that he was required to file an FBAR form, to prepare it, and to help him file it. [Kaufman Affidavit ¶6.]

8. In this connection, Defendant Kaufman provided CPA Foss with all the information that CPA Foss asked for. [Kaufman Affidavit ¶7.]

9. Defendant Kaufman specifically informed CPA Foss that Defendant Kaufman lived and worked in Israel, and that Defendant Kaufman maintained financial accounts in that country. [Kaufman Affidavit ¶8.]

10. Moreover, CPA Larry Foss knew Defendant Kaufman and his family on a personal level. He was Defendant Kaufman's wife's cousin. In that capacity, too, he knew that Defendant Kaufman lived and worked in Israel and that Defendant Kaufman maintained financial accounts in Israel. [Kaufman Affidavit ¶9.]

11. CPA Larry Foss was a competent accountant, capable of preparing Defendant Kaufman's returns and advising Defendant Kaufman of his obligations. [Kaufman Affidavit ¶10.]

12. CPA Foss prepared Defendant Kaufman's income tax returns and handled all of Defendant Kaufman's IRS filings from at least 1975 through Foss's death in 2005. And by all appearances CPA Foss did an excellent job. Not once during all these years did Defendant Kaufman ever have any issues with the IRS, at all. [Kaufman Affidavit ¶11.]

13. Each of these returns listed—among the very first items— Defendant Kaufman's address in Israel. Moreover, each of these returns disclosed Defendant Kaufman's income from Israeli sources (in Israeli currency with a conversion factor to United States Dollars), and included credits for the significant taxes Defendant Kaufman paid to the Israeli government. Even if Defendant Kaufman had not informed CPA Foss that Defendant Kaufman had financial accounts in Israel, any minimally sophisticated reader would conclude that Defendant Kaufman had financial accounts in Israel from the face of Defendant Kaufman's return, based upon Defendant Kaufman business and personal activities disclosed there. [Kaufman Affidavit ¶12.]

14. Defendant Kaufman's US tax filings were not particularly interesting for Defendant Kaufman, to CPA Foss, or even to the United States Government. Defendant Kaufman returns

never reflected a significant tax liability to the United States because Defendant Kaufman received credit for the (comparatively higher) taxes Defendant Kaufman paid to the Israeli Government. For example, Defendant Kaufman had total US tax liabilities of $2,883 for Tax Year 2008, $1,149 for Tax Year 2009, and $356 for Tax Year 2010. Earlier years were even less. [Kaufman Affidavit ¶13.]

15. At no point, through at least July 1, 2011, did CPA Foss, or anyone else, inform Defendant Kaufman that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 did Defendant Kaufman know that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 was there any reason that Defendant Kaufman should have known that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. [Kaufman Affidavit ¶14.]

16. CPA Foss was not a solo practitioner. He had employees, including other CPAs, who also worked with Defendant Kaufman to prepare Defendant Kaufman's tax returns and keep Defendant Kaufman in compliance with all of his IRS filing obligations. These employees had all the information that Defendant Kaufman shared with CPA Foss. This included the facts that Defendant Kaufman lived in Israel, that Defendant Kaufman worked in Israel, and that Defendant Kaufman maintained financial accounts in Israel. [Kaufman Affidavit ¶15.]

17. CPA Larry Foss died in November 2005, but his business remained a going concern. That year, it was acquired by Manzi-Pino & Company, P.C. ("Manzi Pino"). As part of this acquisition, Manzi Pino assumed Defendant Kaufman's client relationship. Additionally, Manzi Pino acquired CPA Foss's employee relationships, including those employees who worked

on Defendant Kaufman's returns. These employees continued to work on Defendant Kaufman's account at Manzi Pino. [Kaufman Affidavit ¶16.]

18. Defendant Kaufman believed that he continued with Manzi Pino on the same terms as his relationship with CPA Foss. Defendant Kaufman hired and paid both CPA Foss and Manzi Pino to advise him on what forms he was required to file with the IRS, to prepare those forms, and to assist him in filing them. This included not only Defendant Kaufman's Form 1040 Ordinary Income Tax Return, but any other return or report that the IRS required. This included an obligation to inform Defendant Kaufman that he was required to file an FBAR form, to prepare it, and to help Defendant Kaufman file it. [Kaufman Affidavit ¶17.]

19. At no point, through at least July 1, 2011, did Manzi Pino, or anyone else, inform Defendant Kaufman that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 did Defendant Kaufman know that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 was there any reason that Defendant Kaufman should have known that he was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. [Kaufman Affidavit ¶18.]

20. On or about September 15, 2010, CPA Devine sent to Defendant Kaufman an email in which he asked whether Defendant Kaufman had any "foreign accounts." Defendant Kaufman replied to this email that he did not. Defendant Kaufman did so because he believed that this question referred to accounts foreign *to him*—that is, outside of Israel and the United States. Defendant Kaufman believed this because he had already disclosed to CPA Foss and Manzi Pino that he had Israeli accounts, and because the fact that he had Israeli accounts was apparent to any

minimally sophisticated person who reviewed his tax return by virtue of his Israeli address and business activities, and his reported tax payments to the Israeli government. [Kaufman Affidavit ¶19.]

21.     Further, Defendant Kaufman's US income tax returns prepared by both Manzi Pino and CPA Foss included Schedule Bs. For at least the past two decades, these Schedule Bs have included a question asking whether Defendant Kaufman has any financial accounts in a "foreign country." CPA Foss always checked this box "no." Manzi Pino likewise checked this box "no" on all returns except Defendant Kaufman's 2010 return, which they prepared after the June 30, 2011 due date of Defendant Kaufman's 2010 FBAR and after both Manzi Pino and Defendant Kaufman became aware of Defendant Kaufman's FBAR filing requirement. [Kaufman Affidavit ¶20.]

22.     By way of example, Defendant Kaufman's 2008 Tax Return—prepared by Manzi Pino—includes numerous references to Defendant Kaufman's Israeli employment, earnings, and Israeli taxes pad. The word "Israel" appears on the return no fewer than seven times, including in Defendant Kaufman's address and his employer's address, and detailing Israeli tax payments made in Israeli shekels. Nevertheless, Manzi Pino prepared a Schedule B with the box asking whether Defendant Kaufman has any financial accounts in a "foreign country" checked "no." [Kaufman Affidavit ¶21.]

23.     On or about June 12, 2009, CPA Devine sent Defendant Kaufman an email stating that he wanted to remind Defendant Kaufman "that US Department of Treasury Form TD 90-22.1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/09 **if you are required to file**" (emphasis added). A similar notice was included with Defendant Kaufman's 2008 Tax Return. However, Defendant Kaufman had never heard of a Form TD 90-22.1 at this time. And Defendant Kaufman believed that Manzi Pino (and CPA Foss before it) would tell him if that form

was required. Defendant Kaufman believed these to be generic notices that did not apply to him. [Kaufman Affidavit ¶22.]

24.     In September 2011—after the June 30, 2011 due date for Defendant Kaufman's 2010 FBAR—Manzi Pino finally informed Defendant Kaufman that he was required to file an FBAR form. Through his own research, Defendant Kaufman came to understand that this was a serious problem. As a result, Defendant Kaufman's 2010 tax return was the last that Manzi Pino prepared on his behalf. [Kaufman Affidavit ¶23.]

25.     Within a few months, Defendant Kaufman hired a new accountant and an attorney. With their help and advice, Defendant Kaufman timely filed his 2011 FBAR by the June 30, 2012 deadline. He also filed the delinquent 2008, 2009, and 2010 FBARs at issue in this case. [Kaufman Affidavit ¶24.]

26.     While all this was going on, Defendant Kaufman was not well. [Kaufman Affidavit ¶25]

27.     On February 11, 2010, Defendant Kaufman suffered a serious heart attack and was immediately hospitalized for eight days. Defendant Kaufman was subject to intermittent hospitalization in the months that followed. [Kaufman Affidavit ¶26.]

28.     On January 13, 2011, Defendant Kaufman was struck by a car as a pedestrian, suffered head trauma, and was taken to the hospital by ambulance. [Kaufman Affidavit ¶27.]

29.     As a result of both these incidents, Defendant Kaufman has had trouble concentrating and experienced cognitive impairment. His doctors—a neuropsychologist and a psychiatrist—determined that he suffered deficiencies in cognition, attention, and memory, and could not remember tasks he had to complete and instructions he had to follow. They accordingly recommended that he could not work through at least July 1, 2011. [Kaufman Affidavit ¶28.]

30. At all times, Defendant Kaufman has exercised ordinary business care with respect to his FBAR filing obligations, especially in light of his circumstances. [Kaufman Affidavit ¶29.]

| | |
|---|---|
| Date: December 30, 2019 | Respectfully Submitted, |

/s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz (ct20938)
Green & Sklarz, LLC
1 Audubon Street, 3rd Fl
New Haven, CT 06511
(203) 285-8545
Fax: (203) 823-4546
jsklarz@gs-lawfirm.com

Jeffrey A. Neiman (admitted *pro hac vice*)
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, Florida 33394
(954) 462-1200
jneiman@mnrlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Date:   December 30, 2019                    /s/ Jeffrey M. Sklarz