## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZVI KAUFMAN, )<br>)<br>Defendant. )<br>_____ ) | Case No. 3:18-cv-787-KAD |

### AFFIDAVIT OF DEFENDANT ZVI KAUFMAN

I, Zvi Kaufman, Defendant in the above-styled action declare as follows:

1. I am 69 years old.

2. Since 1979 I have lived and worked in Israel.

3. On or around May 15, 2012, I filed delinquent FBAR forms for Tax Years 2008, 2009, and 2010. Copies of these forms are attached to the Government's Motion [DE 64-5 through DE 64-7]. These FBAR forms accurately describe the non-U.S. financial accounts over which I had control in each of the relevant years. I maintained these accounts for ordinary business and personal finance purposes. The majority are in fact pension accounts created by my employers over the years. They were not created to hide assets from the United States Government or anyone else.

4. I failed to timely file FBAR forms for Tax Years 2008, 2009, and 2010 because I did not know that I was required to do so.

5. At all times, however, I exercised ordinary business care. I did not neglect my United States regulatory reporting obligations.

1

6. Since at least 1974, I hired a United States CPA, Larry Foss, and his firm (collectively, "CPA Foss") to advise me on what forms I was required to file with the IRS, to prepare those forms, and to assist me in filing them. This included not only my Form 1040 Ordinary Income Tax Return, but any other return or report that the IRS required. Although obviously I did not know of the FBAR requirement at the time, this included an obligation to inform me that I was required to file an FBAR form, to prepare it, and to help me file it.

7. In this connection, I provided CPA Foss with all the information that he asked for.

8. I specifically informed CPA Foss that I lived and worked in Israel, and that I maintained financial accounts in that country.

9. Moreover, CPA Larry Foss knew me and my family on a personal level. He was my wife's cousin. In that capacity, too, he knew that I lived and worked in Israel and that I maintained financial accounts in Israel.

10. CPA Larry Foss was a competent accountant, capable of preparing my returns and advising me of my obligations.

11. CPA Foss prepared my income tax returns and handled all of my IRS filings from at least 1975 through Foss's death in 2005. And by all appearances CPA Foss did an excellent job. Not once during all these years did I ever have any issues with the IRS, at all.

12. Each of these returns listed—among the very first items—my address in Israel. Moreover, each of these returns disclosed my income from Israeli sources (in Israeli currency with a conversion factor to United States Dollars), and included credits for the significant taxes I paid to the Israeli government. Even if I had not informed CPA Foss that I had financial accounts in Israel, any minimally sophisticated reader would conclude that I had financial accounts in Israel from the face of my return, based upon my business and personal activities there.

13. My US tax filings were not particularly interesting for me or (I believe) to CPA Foss or even to the United States Government. My returns never reflected a significant tax liability to the United States because I received credit for the (comparatively higher) taxes I paid to the Israeli Government. For example, I had total US tax liabilities of $2,883 for Tax Year 2008, $1,149 for Tax Year 2009, and $356 for Tax Year 2010. Earlier years were even less.

14. At no point, through at least July 1, 2011, did CPA Foss, or anyone else, inform me that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 did I know that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 was there any reason that I should have known that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government.

15. CPA Foss was not a solo practitioner. He had employees, including other CPAs, who also worked with me to prepare my tax returns and keep me in compliance with all of my IRS filing obligations. These employees had all the information that I shared with CPA Foss. This included the facts that I lived in Israel, that I worked in Israel, and that I maintained financial accounts in Israel.

16. CPA Larry Foss died in November 2005, but his business remained a going concern. That year, it was acquired by Manzi-Pino & Company, P.C. ("Manzi Pino"). As part of this acquisition, Manzi Pino assumed my client relationship. Additionally, Manzi Pino acquired CPA Foss's employee relationships, including those employees who worked on my returns. They continued to work on my account at Manzi Pino.

17. I believe that I continued with Manzi Pino on the same terms as my relationship with CPA Foss. I hired and paid both CPA Foss and Manzi Pino to advise me on what forms I was required to file with the IRS, to prepare those forms, and to assist me in filing them. This included not only my Form 1040 Ordinary Income Tax Return, but any other return or report that the IRS required. This included an obligation to inform me that I was required to file an FBAR form, to prepare it, and to help me file it.

18. At no point, through at least July 1, 2011, did Manzi Pino, or anyone else, inform me that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 did I know that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government. At no point through at least July 1, 2011 was there any reason that I should have known that I was required to file an FBAR form or otherwise report any foreign financial account to the United States Government.

19. On or about September 15, 2010, CPA Devine sent to me an email in which he asked whether I had any "foreign accounts." I replied to this email that I did not. I did so because I believed that this question referred to accounts foreign *to me*—that is, outside of Israel and the United States. I did so because I had already disclosed to CPA Foss and Manzi Pino that I had Israeli accounts, and because the fact that I had Israeli accounts was apparent to any minimally sophisticated person who reviewed my tax return by virtue of my Israeli address and business activities, and my reported tax payments to the Israeli government.

20. Further, my US income tax returns prepared by both Manzi-Pino and CPA Foss included Schedule Bs. For at least the past two decades, these Schedule Bs have included a question asking whether I have any financial accounts in a "foreign country." CPA Foss always

checked this box "no." Manzi Pino likewise checked this box "no" on all returns except my 2010 return, which they prepared after the June 30, 2011 due date of my 2010 FBAR and after we both became aware of my FBAR filing requirement.

21.  By way of example, my 2008 Tax Return—prepared by Manzi Pino—includes numerous references to my Israeli employment, earnings, and Israeli taxes pad. The word "Israel" appears on the return no fewer than seven times, including in my address and employer's address, and detailing Israeli tax payments made in Israeli shekels. Nevertheless, Manzi Pino prepared a Schedule B with the box asking whether I have any financial accounts in a "foreign country" checked "no."

22.  On or about June 12, 2009, CPA Devine sent me an email stating that he wanted to remind me "that US Department of Treasury Form TD 90-22.1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/09 **if you are required to file**" (emphasis mine). A similar notice was included with my 2008 Tax Return. However, I had never heard of a Form TD 90-22.1 at this time. And I believed that Manzi Pino (and CPA Foss before it) would tell me if that form was required. I believe that these to be generic notices that did not apply to me.

23.  In September 2011—after the June 30, 2011 due date for my 2010 FBAR—Manzi Pino finally informed me that I was required to file an FBAR form. Through my own research, I came to understand that this was a serious problem. As a result, my 2010 tax return was the last that Manzi Pino prepared on my behalf.

24.  Within a few months, I hired a new accountant and an attorney. With their help and advice, I timely filed my 2011 FBAR by the June 30, 2012 deadline. I also filed the delinquent 2008, 2009, and 2010 FBARs at issue in this case.

25.  While all this was going on, I was not well.

26. On February 11, 2010, I suffered a serious heart attack and was immediately hospitalized for eight days. I was subject to intermittent hospitalization in the months that followed.

27. On January 13, 2011, I was struck by a car as a pedestrian, suffered head trauma, and was taken to the hospital by ambulance.

28. As a result of both these incidents, I have had trouble concentrating and experienced cognitive impairment. My doctors—a neuropsychologist and a psychiatrist—determined that I suffered deficiencies in cognition, attention, and memory, and could not remember tasks I had to complete and instructions I had to follow. They accordingly recommended that I could not work through at least July 1, 2011.

29. At all times, I have exercised ordinary business care with respect to my FBAR filing obligations, especially in light of my circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 29, 2019.

_____
ZVI KAUFMAN