IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:18-cv-787-KAD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZVI KAUFMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

Plaintiff United States of America hereby files its reply brief in support of its motion for

summary judgment.  The United States will file a separate brief in response to Defendant Zvi

Kaufman's cross-motion for summary judgment, which was filed as part of his response to the

United States' motion.

With regard to non-willful FBAR penalties, once the United States has established that

the accountholder was required to file an FBAR, but failed to do so, the accountholder is liable

for the penalty unless they can establish "reasonable cause."[1]  31 U.S.C. § 5321(a)(5)(B)(ii).

Neither the FBAR penalty provisions of the Bank Secrecy Act ("BSA"), nor the corresponding

regulations define "reasonable cause."  *See* 31 U.S.C. § 5321; 31 C.F.R. § 103.11 (2009).

However, courts interpreting "reasonable cause" for purposes of the BSA have found that

provisions of the Internal Revenue Code, specifically 26 U.S.C. §§ 6651(a) and 6664(c)(1), are

instructive in construing the BSA's "reasonable cause" standard.  *See, e.g., United States v.*

---

[1] The United States does not dispute that the balances in Mr. Kaufman's foreign financial
accounts were properly reported on his late-filed FBARs.

*Agrawal*, Case No. 18-C-0504, 2019 WL 6702114 *4 (E.D. Wis. Dec. 9, 2019); *Jarnagin v.*

*United States*, 134 Fed. Cl. 368, 376 (Fed. Cl. 2017).

In the context of 26 U.S.C. § 6651(a), which deals with penalties imposed for failing to

timely file income tax returns, reasonable cause is defined as a standard of ordinary business care

and prudence.  *Jarnagin*, 134 Fed. Cl. at 376; *see also United States v. Boyle*, 469 U.S. 241, 246

n.4 (1985) (holding that the IRS's "correlation of 'reasonable cause' with 'ordinary business care

and prudence' is consistent with Congress' intent, and over 40 years of case law' and 'merits

deference.'").  Under 26 U.S.C § 6664(c)(1), which provides a reasonable cause defense to the

imposition of accuracy-related penalties under 26 U.S.C. § 6662, reasonable cause

determinations are made on a case-by-case basis taking into account all pertinent facts and

circumstances, most importantly the extent of the taxpayer's efforts to assess their proper tax

liability.  26 C.F.R.§ 1.6664-4(b)(1).

Contrary to Mr. Kaufman's claim, set forth at (Doc. 65-2, p. 6-8), the presence of a

question regarding ordinary business care does not mean that the Court cannot determine

reasonable cause at the summary judgment stage.  Indeed, numerous courts have determined that

accountholders did not have reasonable cause for their failure to file an FBAR and granted

summary judgment to the government on the issue of the accountholder's liability for non-willful

FBAR penalties.  *See Agrawal*, 2019 WL 6702114; *Jarnagin*, 134 Fed. Cl. 368; *Moore v. United*

*States*, Case No. C13-2063RAJ, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015).  Where, as here,

an accountholder cannot meet their burden to show that their failure to file an FBAR was due to

reasonable cause, summary judgment is appropriate.

Mr. Kaufman states that he did not timely file his FBARs because he did not know of the

filing requirement.  (Doc. 65-3, ¶ 4).  Ignorance of a filing requirement does not constitute

2

reasonable cause for failing to file an FBAR.  *See, e.g.*, *United States v. Brennan*, 488 F.2d 858, 861 (5th Cir. 1974) ("The cases are agreed that neither inadvertence nor ignorance of the law is an excuse to avoid the [§ 6651] penalty."); *Mostafa v. C.I.R.* T.C. Memo 2006-106 ("Petitioner's mistake as to or ignorance of the law does not amount to reasonable cause that would relieve her from the addition to tax.").  This makes logical sense: if one is unaware of a requirement, the failure to comply with the requirement cannot be an exercise of ordinary business care and prudence, without a demonstration that it was reasonable and prudent to remain ignorant.  Such a demonstration cannot be made here.

Moreover, a claim of ignorance cannot be made where, as here, the FBAR filing requirement has been explicitly brought to the accountholder's attention numerous times.  Mr. Kaufman admits that his U.S. tax returns for at least the last 20 years (including the years at issue in this case) have included Schedule B, line 7(a) of which asks whether the taxpayer has an interest in, or signature authority over financial accounts in a foreign county, and directs the taxpayer to the instructions for the FBAR form.[2]  (Doc. 65-3, ¶ 20); Plaintiff's Exhibit ("P.Ex.") G-I.  Accountants from Manzi Pino & Company, P.C., which prepared Mr. Kaufman's tax returns for the years at issue, notified Mr. Kaufman multiple times about the FBAR filing requirement.  First, on October 9, 2009, the cover letter attached to Mr. Kaufman's 2008 federal income tax return stated, as follows:

> DON'T FORGET THAT THE US DEPARTMENT OF
> TREASURY FORM TD F 90-22.1, REPORT OF FOREIGN
> BANK ACCOUNT AND FINANCIAL ACCOUNTS, SHOULD
> BE COMPLETED AND FILED IF REQUIRED.  THIS FORM
> CAN BE DOWNLOADED AT IRS.GOV.

---

[2] The instructions for the FBAR form in use at the time specified that any U.S. person with over $10,000 in financial accounts outside of the U.S. was required to file. https://www.sec.gov/about/offices/ocie/aml/f90221.pdf (last accessed January 2, 2020).

Please be sure to call if you have any questions.

P. Ex. G.[3]  Second, Chris Devine sent Mr. Kaufman an email on June 29, 2010 which stated: "I want to remind you that U.S. Treasury Form TD 90.22-1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/2010 if you are required to file.  The form can be downloaded at IRS.Gov."  P. Ex. K.  As Mr. Kaufman admits, Mr. Devine emailed him on September 15, 2010, and explicitly asked Mr. Kaufman whether he had any foreign accounts; Mr. Kaufman replied that he did not.  (Doc. 65-3, ¶ 19).  Mr. Devine sent an email to Mr. Kaufman on June 23, 2011 which contained identical language regarding the FBAR filing requirement as the June 29, 2010 letter, except that it stated that the due date was 6/30/2011.  P. Ex. L.  During the preparation of Mr. Kaufman's 2008 and 2009 federal income tax returns, Mr. Devine asked Mr. Kaufman whether he had a foreign bank account and in both years Mr. Kaufman responded that he did not. P. Ex. M, pp. 33:6-9; 48:11-15.  However, despite all of these warnings, Mr. Kaufman took no action to determine whether he was required to file the FBAR.  P. Ex. N, ¶ 24.  As the court noted in *Moore*, the fact that the taxpayer checked "no" on tax organizers provided by his accountant which asked about foreign bank accounts, and the "decision to avoid further inquiry" on whether or not he was required to file an FBAR was not an exercise of ordinary business care. *Moore*, 2015 WL 1510007 at *6-7.  Mr. Kaufman's actions in ignoring even more direct warnings about his FBAR filing requirements is similarly not an exercise of reasonable care.

Notwithstanding all of the times he was notified regarding the FBAR filing requirement and questions regarding foreign bank accounts, Mr. Kaufman claims that he did not believe that

---

[3] Chris Devine sent an email to Mr. Kaufman on June 12, 2009, informing him of the FBAR filing requirement and the due date of the 2008 FBAR.  P. Ex. J.  However, it appears that Mr. Kaufman may not have received that email due to a change in his email address.

the FBAR filing requirement applied to him because he believed "foreign accounts" included

only accounts foreign to the countries of which he was a citizen:  Israel and the United States.[4]

(Doc. 65-2, p. 13). The court in *Moore* rejected a similar argument—the accountholder stated

that he did not believe that he had to disclose his account because the account at issue was held

in the name of a corporation he controlled rather than in his own name—holding that, as a matter

of law, line 7(a) on Schedule B, which asked if the taxpayer had "signature authority over a

financial account in a foreign country" placed the accountholder "on notice that he should

inquire as to whether his account was subject to disclosure" and that the failure to do so was not

an exercise of ordinary business care.  *Moore*, 2015 WL 1510007 at *6.  Similarly, Mr. Kaufman

did not take any action to determine whether he had to disclose his foreign accounts, and did not

follow up with his accountants after being reminded about FBAR filing deadlines.  P. Ex. M, p.

43:14-17, P. Ex. N, ¶ 24.  He admits that his U.S. tax filing obligations were of "low priority" to

him, that he chose not to allocate his attention to his tax filing obligations, and that he was not

attuned to developments in U.S. financial reporting law.  Given that he was uninformed about the

law, ordinary business care would have required Mr. Kaufman to inquire as to whether he had to

disclose his foreign accounts.  Mr. Kaufman failed to make an effort to determine whether he

was required to disclose his foreign accounts and he thus did not have reasonable cause.

Further, Mr. Kaufman's belief regarding what a "foreign" account entails is objectively

unreasonable.  Mr. Kaufman was filing U.S. tax returns, and the plain and obvious meaning of

"foreign" on a U.S. tax return is foreign with relation to the United States.  Moreover, in each of

the relevant tax years, Mr. Kaufman's tax return contained a number of forms that referred to

---

[4] The article by now-Commissioner Rettig is of no moment, as the article in no way states that
such a mistaken belief does or should constitute reasonable cause.

Israel as a foreign country.  Mr. Kaufman notes that the word "Israel" appears seven times on his 2008 tax return.  Israel is mentioned six times as part of Form 1116, the form used to claim the Foreign Tax Credit, which states that Israel is Mr. Kaufman's country of residence, but goes on to refer to Israel twice as a "foreign country" on the first line of part 1; two Forms 1116 are part of Mr. Kaufman's 2008 income tax return, with the second being for purposes of the Alternative Minimum Tax.  P. Ex. G.  Israel is also referred to as a foreign country on Form 2555 and 2555-EZ, on which Mr. Kaufman reported foreign earned income and claimed an exclusion for such income.  *Id.*  Mr. Kaufman claimed the foreign tax credit for tax years 2009 and 2010 as well, and the Forms 1116 for those years all refer to Israel as a foreign country.  P. Ex. H-I.  Because taxpayers are charged with knowledge of the statements contained in the tax returns they file with the IRS, Mr. Kaufman is charged with knowledge that Israel is a foreign country for purposes of line 7(a) of Schedule B or, at the very least, was under a duty to inquire whether he had an obligation to disclose his Israeli accounts.  *See United States v. McBride*, 908 F.Supp.2d 1186, 1206 (D. Utah 2012); *Moore*, 2015 WL 1510007 at *6.

Mr. Kaufman then argues he had reasonable cause because he relied on his accountants to prepare his FBARs for him.  As an initial matter, and contrary to Mr. Kaufman's argument, the case law is clear that the duty to file returns and reports is a nondelegable duty.[5]  *See, e.g., Jarnagin*, 134 Fed. Cl. at 379 (citing *United States v. Boyle*, 469 U.S. at 249, and *Baccei v. United States*, 632 F.3d 1140, 1148 (9th Cir. 2011)).  Under the regulations accompanying 26

---

[5] Mr. Kaufman's citations are to the Internal Revenue Manual, which not only provides no substantive rights to taxpayers, but explicitly contradicts his argument.  *See* Internal Revenue Manual 20.1.1.3.2.2.5(4) ("The taxpayer may try to establish reasonable cause by claiming he or she relied on another party to comply on his or her behalf.  Generally, this is **not** a basis for reasonable cause, particularly for filing or paying obligations, since **the taxpayer is responsible for meeting his or her tax obligations and that responsibility cannot be delegated**.")

U.S.C. § 6664, reliance on a return professional or other advisor may constitute reasonable

cause, if, under all the circumstances, such reliance was reasonable and the taxpayer acted in

good faith. 26 C.F.R. § 1.6664-4(b)(1).  Merely having a return professional or other advisor

does not necessarily demonstrate reasonable cause.  *Id.*  The Treasury Regulations also contain

examples that illustrate "reasonable cause" when a taxpayer engages a professional tax advisor,

provides the advisor with full details, and relies upon the advisor's advice. 26 C.F.R. § 1.6664-

4(b)(2). The regulation defines "advice" as "any communication, including the opinion of a

professional tax advisor, setting forth the analysis or conclusion of a person, other than the

taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies,

directly or indirectly." 26 C.F.R. § 1.6664-4(c)(2). Additionally, the taxpayer's education,

sophistication, and business experience must be considered in determining whether the taxpayer

relied upon the advisor's advice in good faith. 26 C.F.R. § 1.6664-4(b)(2).

The accountants with whom Mr. Kaufman worked at Manzi Pino never advised him not

to file an FBAR.  P. Ex. M, p. 44:1-9, 65:4-7, 89:18-22; P. Ex. O, p. 34:17-19, 44:6-22.  Mr.

Kaufman admits that he never took any steps to learn about his FBAR filing obligations after

receiving the cover letter for his 2008 tax return.  P. Ex. N. ¶ 24.   Mr. Kaufman therefore cannot

point to any "advice" he received from his accountants; indeed, the only communications made

by the accountants regarding the FBAR within the relevant periods were their reminders to Mr.

Kaufman about the FBAR due dates and the accountants asking whether he had foreign bank

accounts (a question which he answered falsely).  P. Ex. K-L; M 33:6-9, 48:11-15; (Doc. 65-3,

¶ 19).  Although Mr. Kaufman notes that Manzi Pino answered line 7(a) of Schedule B

incorrectly when they prepared his 2008 and 2009 returns, they did so based on Mr. Kaufman's

statements that he did not have foreign bank accounts.  P. Ex. M, p. 38:18-39:6, 48:11-15.  Mr.

Kaufman's failure to disclose the Israeli accounts is thus not supported by reasonable cause. *See Jarnagin*, 134 Fed. Cl. at 378-79 (reasonable cause did not support failure to disclose accounts where "the Jarnagins neither requested nor received any advice one way or the other from their accountants regarding whether they were required to file FBARs.").

Mr. Kaufman claims that he believed that, if he were required to file the FBAR, Manzi Pino would have prepared the form for him and told him that he had to file it. (Doc. 65-2, at 14). Mr. Kaufman admits that he took no action himself to determine whether he had an FBAR filing requirement, and thus his failure to disclose his accounts is not supported by reasonable cause. 26 C.F.R.§ 1-6664-4(b)(1). Mr. Kaufman also is not entitled to delegate the non-delegable duty of disclosing his accounts by filing the FBAR form, which is what he admits to doing in not taking any action and waiting for Manzi Pino to prepare the form for him. *Jarnagin*, 134 Fed. Cl. at 379. Even if the duty were delegable, Manzi Pino could not have prepared an FBAR for Mr. Kaufman because, contrary to his assertion that he was "completely forthright with his CPAs" about his financial accounts, (Doc. 65-2, p. 13-14), he never disclosed the information about his foreign accounts required to prepare an FBAR that disclosed all of his foreign accounts. Indeed, in two of the three years, he informed Chris Devine that he had no foreign accounts. P. Ex. M, pp. 32:23-33:9, 50:5-24. In the third year, 2010, he disclosed that he had an account at Excellence, but it appears that the disclosure was made after the deadline to file the FBAR. P. Ex. M, p. 102:18-103:13. Mr. Kaufman did not disclose any of the information that Manzi Pino would have required to fill out the FBAR form.[6] P. Ex. N ¶ 25-27. As such, there was no way that Manzi Pino could have prepared an FBAR form for Mr. Kaufman.

---

[6] The United States notes that there is a typographical error in Mr. Kaufman's reproduction of the United States' interrogatories 25-27. In the interrogatories the United States sent to Mr.

Mr. Kaufman argues that Manzi Pino could have prepared the FBAR because they knew he had Israeli accounts. (Doc. 65-2, p. 12-13).  As noted above, Mr. Kaufman admits that he did not disclose the existence, the account numbers, or the high balances of the accounts in any of the relevant years to Manzi Pino, which is the information required to report such accounts to the United States.[7]   P. Ex. N, ¶ 25-27; P. Ex. O 11:8-20.  Mr. Kaufman cannot create an issue of fact by contradicting his own sworn statements.  *See Langman Fabrics v. Graff Californiaware Inc.*, 160 F.3d 106, 112 (2d Cir. 1998).  Further, the court in *Jarnagin* rejected a similar argument: even taking as a given that the Jarnagins' accountants were aware of the foreign accounts, their failure to take any steps to determine whether they were required to disclose their foreign accounts and the misstatements on Schedule B when asked if they had foreign accounts foreclosed a reasonable cause defense.  *Jarnagin*, 134 Fed. Cl. at 377-79.  Similarly, Mr. Kaufman did not take any steps to determine whether he was required to disclose his Israeli accounts and his failure to do so is thus not supported by reasonable cause.

Mr. Kaufman's final argument is that he exercised reasonable care in light of illness and injuries he suffered in February 2010 and January 2011, respectively.  (Doc. 65-2, p. 15-16).  For an injury or illness to qualify as "reasonable cause," the taxpayer must prove that "a disability beyond his control rendered him unable to exercise ordinary business care." *In re Sandford*, 979 F.2d 1511, 1514 n.8 (11th Cir. 1992); *see also In re Carlson*, 126 F.3d 915, 923 (7th Cir. 2007) ("We believe the type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply—things

---

Kaufman, subpart "c" of each interrogatory asks about the high balance in the relevant year, rather than the high balance in 2008 for each year.

[7] It appears, instead, that Mr. Kaufman told his accountants that he was paying his bills through a U.S. brokerage account.  P. Ex. O 22:13-23:20, 24:18-25:4.

like emergency hospitalization or other incapacity occurring around tax time.").  Mr. Kaufman

has not argued that his illness rose to that level, and there is nothing in the record that would

allow a jury to reach that conclusion.  Mr. Kaufman's allegations regarding his doctor's

determinations, set forth at (Doc. 65-3, ¶ 28), are all inadmissible hearsay and should not be

considered.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("[O]nly admissible evidence

need be considered by the trial court in ruling on a motion for summary judgment.").  Even were

his statements admissible, there is no evidence that his illness incapacitated him such that he

could not exercise his business judgment.  Moreover, his actions in the months before his FBARs

were due for 2009 and 2010 showed that he was not incapable of exercising his business

judgment because he communicated with Manzi Pino regarding extensions of time to file his tax

returns and sold assets from his Israeli accounts.  P. Ex. N, ¶ 22-23; *Stine v. United States*, 106

Fed. Cl. 586, 592 (Fed. Cl. 2012) ("Evidence that the taxpayer is able to conduct his or her

business or financial affairs despite the illness shows that the illness is not severe enough to

constitute reasonable cause under § 6651(a)." (citing *Carlson*, 126 F.3d at 923)).  As such, Mr.

Kaufman's failure to disclose his Israeli accounts was not supported by reasonable cause.

<div style="margin-left: 40%;">

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Bradley A. Sarnell*
BRADLEY A. SARNELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-307-1038 (v)
202-514-5238 (f)
Bradley.A.Sarnell@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of January, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all ECF filers.  There are no parties that require conventional service.

/s/ Bradley A. Sarnell
BRADLEY A. SARNELL
Trial Attorney
United States Department of Justice, Tax Division