UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                    CASE NO. 3:18-cv-787-KAD

    Plaintiff,

vs.

ZVI KAUFMAN,

    Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
THIRD SET OF INTERROGATORIES**

Defendant Zvi Kaufman, pursuant to Federal Rule of Civil Procedure Rule 33, hereby responds to Plaintiff's Third Set of Interrogatories to Defendant Zvi Kaufman:

**17.** **Identify all dates between January 1, 2010, and July 1, 2010, during which you were hospitalized or underwent surgery, including but not limited to the hospitalizations and surgeries referenced in your response to the United States' Interrogatory #16, and describe the reason for such hospitalization or surgery (including whether any such surgery was inpatient or outpatient).**

**RESPONSE:** Defendant identifies the following surgeries or periods of hospitalization in response to this interrogatory:

| | |
|---|---|
| February 11, 2010 through February 15, 2010 | Inpatient hospitalization at Sheba Medical Center for treatment of heart attack and acute myocardial infraction. |
| February 15, 2010 through February 19, 2010 | Transferred from Sheba Medical Center to Assuta Hospital for post-heart attack rehabilitation on an inpatient basis. |
| March 9, 2010 | Underwent a PTCA Catheterization and Stenting at Sheba Medical |

1


Plaintiff Exhibit N

| through<br>March 10, 2010 | Center. This was an inpatient procedure. |
|---|---|
| April through June, 2010 | During this period, Defendant attended Sheba Medical Center for rehabilitation related to his heart attack, on an outpatient basis. |
| June 9, 2010<br>through<br>June 10, 2010 | Defendant was admitted to Sheba Medical Center's emergency room complaining of chest pains and held overnight. |
| January 13, 2011 | Defendant was taken to the Emergency Room at Rabin Medical Center by ambulance after suffering head trauma and other injuries. |
| January 20, 2011<br>through<br>January 21, 2011 | Defendant was admitted to the Emergency Room at Sheba Medical Center complaining of chest pains and held overnight. |
| June 9, 2011<br>through<br>June 10, 2011 | Defendant underwent a CIAD catheterization and stenting at Tel Aviv Medical Center. This was an inpatient procedure. |

**18.   Describe any activities, aside from filing Report of Foreign Bank and Financial Account forms with the IRS, that you did not perform between January 1, 2010 and July 1, 2010 in the exercise of your ordinary business care due to any illness or incapacity referred to in response to the United States' Interrogatory #3.**

**RESPONSE:** Between January 1 and February 11, 2010, Defendant actively engaged in the management of his pension accounts by moving accounts with several investment firms to Psagot Pension funds. Further, Defendant had left a job as Managing Director of a pharmaceutical company. Accordingly, during this time, Defendant engaged in job search activities in conjunction with an executive search firm, and went on several interviews.

Following his hospitalization on February 11, 2010, through June 30, 2010, Defendant stopped job search activities. He also stopped the actions he was taking to simplify and manage his financial accounts, stopped reviewing financial documents, and stopped engaging in business activities.

2

19.     Describe any activities, aside from filing Report of Foreign Bank and Financial Account forms with the IRS, that you did not perform between January 1, 2011 and July 1, 2011, in the exercise of your ordinary business care due to any illness or incapacity referred to in response to the United States' Interrogatory #3.

**RESPONSE:** In the later months of 2010, Defendant resumed his job search activities and settled upon a position with a medical start up in Israel. However, after January 13, the date of his head injury, Defendant declined the job offer due to a belief that he could no longer deliver work that met the firm's expectations. Again, Defendant stopped all job searching activities. He experienced reading difficulties and was unable to concentrate on financial and other documents. He failed to reconcile his bank statements and was late in paying various bills.

20.     Identify any persons who held power of attorney or was otherwise authorized to conduct financial transactions on your behalf between January 1, 2010 and July 1, 2010, describe the terms of any such power of attorney or authorization and identify how and when such authority was exercised during that period.

**RESPONSE:** Defendant did not have anyone formally appointed to manage his financial affairs during this period through a power of attorney or otherwise. Regarding the day-to-day finances of his household, Defendant came to rely more upon his wife.

21. **Identify any persons who held power of attorney or was otherwise authorized to conduct financial transactions on your behalf between January 1, 2011 and July 1, 2011, describe the terms of any such power of attorney or authorization and identify how and when such authority was exercised during that period.**

**RESPONSE:** Defendant did not have anyone formally appointed to manage his financial affairs during this period through a power of attorney or otherwise. Regarding the day-to-day finances of his household, Defendant came to rely more upon his wife.

22. **State whether you engaged in each of the following activities between January 1, 2010 and July 1, 2010 and, if you did engage in such activities, state that dates on which you engaged in such activities (or, if you are unable to state each instance in which you engaged in such activity, state the number of time you engaged in such activities) and describe how you engaged in such activities:**

   a. **Filing or authorizing the filing of forms with the Internal Revenue Service, including but not limited to federal income tax returns or requests for extension of time to file federal income tax returns.**

   b. **Review and/or execution of financial documents.**

   c. **Transfers of real or personal property to any other person or entity.**

   d. **Signing checks drawn on a financial account.**

   e. **Composing or reviewing business correspondence.**

   f. **Reading and signing forms, including financial forms.**

   g. **Communication with financial professionals, including but not limited to employees of Manzi Pino & Company.**

   h. **Executing or authorizing the sale of securities.**

    **i.**    **Any transactions (including but not limited to purchases, sales, or other transfers of assets) involving foreign financial accounts you disclosed to the IRS on your Report of Foreign Bank and Financial Accounts for tax year 2009.**

    **RESPONSE:**

        a.    Defendant does not have a specific recollection of obtaining an extension for his tax returns. However, he believes it likely that his accountant asked him to authorize an extension, and that he gave such authorization. Beyond this, Defendant did not engage in these activities.

        b.    Defendant did not engage in these activities.

        c.    Defendant did not engage in these activities.

        d.    Defendant does not recall engaging in these activities. After reasonable inquiry, he is unable to determine whether he engaged in these activities.

        e.    Defendant did not engage in these activities.

        f.    Defendant did not engage in these activities.

        g.    Although Defendant does not have a specific recollection of the conversation, it is likely that he communicated with someone from Manzi Pino to provide them with authorization to extend his tax return deadline.

        h.    Defendant did not engage in these activities.

        i.    Prior to his heart attack on February 11, 2010, Defendant made efforts to consolidate several pension accounts into Psagot Investments. Defendant stopped doing so after he suffered his heart attack.

**23.** State whether you engaged in each of the following activities between January 1, 2011 and July 1, 2011 and, if you did engage in such activities, state that dates on which you engaged in such activities (or, if you are unable to state each instance in which you engaged in such activity, state the number of time you engaged in such activities) and describe how you engaged in such activities:

    a.    Filing or authorizing the filing of forms with the Internal Revenue Service, including but not limited to federal income tax returns or requests for extension of time to file federal income tax returns.

    b.    Review and/or execution of financial documents.

    c.    Transfers of real or personal property to any other person or entity.

    d.    Signing checks drawn on a financial account.

    e.    Composing or reviewing business correspondence.

    f.    Reading and signing forms, including financial forms.

    g.    Communication with financial professionals, including but not limited to employees of Manzi Pino & Company.

    h.    Executing or authorizing the sale of securities.

    i.    Any transactions (including but not limited to purchases, sales, or other transfers of assets) involving foreign financial accounts you disclosed to the IRS on your Report of Foreign Bank and Financial Accounts for tax year 2009.

**RESPONSE:**

    a.    Defendant confirmed with Manzi Pino & Company that they would file an extension for his tax returns.

    b.    Defendant did not engage in these activities.

    c.    Defendant did not engage in these activities.

    d.    Defendant does not recall engaging in these activities. After reasonable inquiry, he is unable to determine whether he engaged in these activities.

    e.    Defendant did not engage in these activities.

    f.    Defendant did not engage in these activities.

    g.    On April 7, 2011, Defendant replied to a question from Manzi Pino about the extension of the due date for his tax returns.

    h.    Defendant did not engage in these activities.

    i.    On or about June 20, 2011, a financial management professional at Psagot called Defendant to discuss the growth of certain equities, which growth had left his account with equity and bond investments out of proportion with the risk guidelines that Defendant had previously given the firm. Accordingly, at the professional's recommendation, Defendant transferred the shares out of the account.

**24.   Describe any efforts you made to investigate whether you were required to file a Report of Foreign Bank and Financial Accounts with the IRS after receiving the October 6, 2009 letter from Roger F. Stebbins, Jr. (which you previously produced to the United states as Document MNR-000029).**

**RESPONSE:** Defendant took no additional efforts to investigate whether he was required to file a Report of Foreign Bank and Financial Accounts with the IRS after receiving the October 6, 2009 letter from Roger F. Stebbins, Jr. (MNR-000029).

This letter references such a report, stating that it should be "completed and filed *if required*." Defendant's US accountants, who Defendant had hired and relied upon to advise him

as to his IRS filing obligations, had not indicated by this time that such a form was required in his case.

Manzi Pino and its predecessor businesses had served as Defendant's accountants for US taxation purposes since 1974, and its services had never presented a problem for Defendant or the IRS before. In 1974, Defendant chose Larry Foss CPA to because Mr. Foss was Defendant's relative by marriage and Defendant knew him to be a competent, trustworthy, and capable CPA.

At all times during their business relationship, Defendant's ownership of non-U.S. bank accounts was known to Mr. Foss and was obvious to Manzi Pino and its employees.  Every year, Defendant disclosed to Manzi Pino that he had an Israeli home address (where he received correspondence). The telephone number he provided Manzi Pino was also an Israeli number and required the caller to enter the "00" international telephone exchange prefix and Israel's country code before the call could be connected. Further, Defendant disclosed that he was the salaried employee of a firm with an Israeli address and reported his income to Manzi Pino in Israeli Shekels. This income, by itself, exceeded $10,000 per month.

Defendant accordingly reasonably believed that Manzi Pino was aware that he had Israeli bank accounts and would have advised him of any resultant IRS filing obligations or asked additional questions designed to determine those obligations, if any existed.

**25.    For each of the foreign financial accounts you reported to the IRS on your Report of Foreign Bank and Financial Accounts for the Tax Year 2008, state the date on which you disclosed the following information to an employee of Manzi Pino & Company (including to which employee you made the disclosure) and identify any documents you disclosed to that employee as part of such disclosure.**

      **a.    The existence of the account.**

      **b.    The account number.**

      **c.    The high balance in the account during 2008.**

**RESPONSE:** Defendant did not disclose this information to Manzi Pino & Company because before approximately September of 2011, Defendant was not aware that the information was relevant to his IRS reporting obligations.

Manzi Pino and its predecessor businesses had served as Defendant's accountants for US taxation purposes since 1974, and its services had never presented a problem for Defendant or the IRS before. In 1974, Defendant chose Larry Foss CPA to because Mr. Foss was Defendant's relative by marriage and Defendant knew him to be a competent, trustworthy, and capable CPA.

At all times during their business relationship, Defendant's ownership of non-U.S. bank accounts was known to Mr. Foss and was obvious to Manzi Pino and its employees. Every year, Defendant disclosed to Manzi Pino that he had an Israeli home address (where he received correspondence). The telephone number he provided Manzi Pino was also an Israeli number and required the caller to enter the "00" international telephone exchange prefix and Israel's country code before the call could be connected. Further, Defendant disclosed that he was the salaried

employee of a firm with an Israeli address and reported his income to Manzi Pino in Israeli Shekels. This income, by itself, exceeded $10,000 per month.

Defendant accordingly reasonably believed that Manzi Pino was aware that he had Israeli bank accounts and would have advised him of any resultant IRS filing obligations or asked additional questions designed to determine those obligations, if any existed.

Upon learning of his FBAR filing obligations, Defendant consulted with another American CPA based in Israel and was referred to US tax attorney Jo Anne Alderstein.

**26.     For each of the foreign financial accounts you reported to the IRS on your Report of Foreign Bank and Financial Accounts for the Tax Year 2009, state the date on which you disclosed the following information to an employee of Manzi Pino & Company (including to which employee you made the disclosure) and identify any documents you disclosed to that employee as part of such disclosure.**

      **a.** **The existence of the account.**

      **b.** **The account number.**

      **c.** **The high balance in the account during 2008.**

**RESPONSE:**

Defendant did not disclose this information to Manzi Pino & Company because before approximately September of 2011, Defendant was not aware that the information was relevant to his IRS reporting obligations.

Manzi Pino and its predecessor businesses had served as Defendant's accountants for US taxation purposes since 1974, and its services had never presented a problem for Defendant or the IRS before. In 1974, Defendant chose Larry Foss CPA to because Mr. Foss was Defendant's relative by marriage and Defendant knew him to be a competent, trustworthy, and capable CPA.

At all times during their business relationship, Defendant's ownership of non-U.S. bank accounts was known to Mr. Foss and was obvious to Manzi Pino and its employees. Every year, Defendant disclosed to Manzi Pino that he had an Israeli home address (where he received correspondence). The telephone number he provided Manzi Pino was also an Israeli number and required the caller to enter the "00" international telephone exchange prefix and Israel's country code before the call could be connected. Further, Defendant disclosed that he was the salaried employee of a firm with an Israeli address and reported his income to Manzi Pino in Israeli Shekels. This income, by itself, exceeded $10,000 per month.

Defendant accordingly reasonably believed that Manzi Pino was aware that he had Israeli bank accounts and would have advised him of any resultant IRS filing obligations or asked additional questions designed to determine those obligations, if any existed.

Upon learning of his FBAR filing obligations, Defendant consulted with another American CPA based in Israel and was referred to US tax attorney Jo Anne Adlerstein.

**27.     For each of the foreign financial accounts you reported to the IRS on your Report of Foreign Bank and Financial Accounts for the Tax Year 2010, state the date on which you disclosed the following information to an employee of Manzi Pino & Company (including to which employee you made the disclosure) and identify any documents you disclosed to that employee as part of such disclosure.**

  **a.     The existence of the account.**

  **b.     The account number.**

  **c.     The high balance in the account during 2008.**

**RESPONSE:**

Defendant did not disclose this information to Manzi Pino & Company because before approximately September of 2011, Defendant was not aware that the information was relevant to his IRS reporting obligations.

Manzi Pino and its predecessor businesses had served as Defendant's accountants for US taxation purposes since 1974, and its services had never presented a problem for Defendant or the IRS before. In 1974, Defendant chose Larry Foss CPA to because Mr. Foss was Defendant's relative by marriage and Defendant knew him to be a competent, trustworthy, and capable CPA.

At all times during their business relationship, Defendant's ownership of non-U.S. bank accounts was known to Mr. Foss and was obvious to Manzi Pino and its employees. Every year, Defendant disclosed to Manzi Pino that he had an Israeli home address (where he received correspondence). The telephone number he provided Manzi Pino was also an Israeli number and required the caller to enter the "00" international telephone exchange prefix and Israel's country code before the call could be connected. Further, Defendant disclosed that he was the salaried

employee of a firm with an Israeli address and reported his income to Manzi Pino in Israeli Shekels. This income, by itself, exceeded $10,000 per month.

Defendant accordingly reasonably believed that Manzi Pino was aware that he had Israeli bank accounts and would have advised him of any resultant IRS filing obligations or asked additional questions designed to determine those obligations, if any existed.

Upon learning of his FBAR filing obligations, Defendant consulted with another American CPA based in Israel and was referred to US tax attorney Jo Anne Alderstein.

Dated: October 28, 2019

      Respectfully Submitted,

      /s/ Jeffrey A. Neiman
      Jeffrey A. Neiman
      Fla. Bar No. 544469
      jneiman@mnrlawfirm.com

      **MARCUS NEIMAN & RASHBAUM LLP**

      100 Southeast Third Avenue, Suite 805
      Ft. Lauderdale, Florida 33394
      Telephone: (954) 462-1200

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2019, a true and correct copy of the foregoing was served via email on opposing counsel.

      By:   /s/ Jeffrey Neiman
               Jeffrey Neiman

## VERIFICATION OF INTERROGATORY ANSWERS

I, Zvi Kaufman, am the Defendant in this case and believe, based upon reasonable inquiry, that the foregoing answers are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on _____October 28_____, 2019.

_____
Zvi Kaufman

14