IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 3:18-cv-787-KAD |
| v. | ) |
| ZVI KAUFMAN, | ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Plaintiff United States of America hereby responds to Defendant Zvi Kaufman's motion for partial summary judgment. The sole legal issue Mr. Kaufman raises is that non-willful penalties under 31 U.S.C. § 5321(a)(5)(A) should be assessed per FBAR form not timely filed and not per account not reported to the IRS. Mr. Kaufman's position is not supported. As set forth below, the Bank Secrecy Act ("BSA") and its implementing regulations provide that a violation of the FBAR reporting requirements—the violation punishable by imposition of FBAR penalties—relates to an undisclosed or improperly disclosed relationship (i.e., account) with a foreign financial institution.

As an initial matter, the only court to have opined on this issue is the U.S. District Court for the Central District of California in the *Boyd* case. *United States v. Boyd*, Case No. 18-cv-803, 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019). In that case, the court granted the United States' motion for summary judgment, finding that "[e]ach non-willful FBAR violation relates to a foreign financial account, and the IRS may penalize such violation with a penalty not to exceed $10,000." *Id.* at *1. Aside from the bald statement that the Court should not follow the *Boyd*

1

decision, Mr. Kaufman does not engage with the *Boyd* court's reasoning in any way. As such, the Court should consider the *Boyd* decision persuasive authority on the issue.

Nor does Mr. Kaufman analyze 31 U.S.C. § 5321 or its implementing regulations in any meaningful way. Instead, he notes that the relevant regulation, 31 C.F.R. § 1010.350, requires persons with foreign accounts to report them using the FBAR form and then makes the conclusory leap that "[a] plain reading of [31 U.S.C. §§ 5321 and 5314] demonstrates that Congress authorized up to a $10,000 penalty for a non-willful 'violation' of 31 U.S.C. § 5314. And Section 5314 itself requires the filing of reports." (Doc. 65-2, p. 19). However, analysis of the statutes and regulations shows that the violation which can be penalized under § 5314 is the failure to report a foreign financial account. Accordingly, the failure to report each account is a separate violation subject to a penalty of up to $10,000.

The BSA was intended to close "the largest single tax loophole permitted by American law," the secret foreign bank account. H.R. Rep. 91-975 (1970) *reprinted in* 1970 U.S.C.C.A.N. 4394, 4398. Congress found that undisclosed relationships with "secret foreign financial facilities," particularly those in Switzerland, facilitated a number of unsavory activities, including income tax evasion, schemes to defraud the United States, and the illegal concealment of assets. *Id.* at 4397-4398. In an effort to unearth such relationships, the Treasury Secretary was authorized to assess a penalty "on any person who violates, or causes any violation of, any provision of [31 U.S.C.] section 5314." 31 U.S.C. § 5321(a)(5)(A).

Section 5314 provides that the Treasury Secretary shall require U.S. citizens (and others) "to keep records, file reports, or keep records and file reports, when [they, among other things,] . . . maintain[] a relation for any person with a foreign financial agency." 31 U.S.C. § 5314(a). While Section 5314 does not, by itself, explain exactly how a person who maintains relationships

with foreign financial institutions must comply with the reporting obligation, it directs that records and reports must "contain . . . (1) the identity and address of participants in a transaction or relationship, (2) the legal capacity in which a participant is acting, (3) the identity of the real parties in interest, and (4) a description of the transaction." 31 U.S.C. § 5314(a). A person can meet these requirements only by providing the information on an account-by-account basis. For example, a person with three accounts at the same financial institution—one owned individually, one owned jointly, and one for which they have signature authority—could comply only by reporting such interests on a per-account basis.

But most of the implementing details are left to the Treasury Secretary, who may "prescribe [among other things] a reasonable classification of persons subject to or exempt from a requirement under this section or a regulation under this section." 31 U.S.C. § 5314(b)(1). Thus authorized, the Treasury Secretary promulgated 31 C.F.R. § 1010.350(a), which provides that:

> Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. § 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form.

By using the imperative, "shall," the regulation mandates that covered persons (a) report certain relationships (accounts) they have in foreign countries and (b) with respect to such relationships, provide the information specified on the FBAR form. In turn, the FBAR form requires that the U.S. person provide, for each account in which they have an interest, identifying information about the U.S. person, the name and address of the foreign institution, the account

3

number, and the maximum balance in the account, as well as the legal capacity in which they hold that interest (ownership, joint ownership, signature authority).[1]  Any person who non-willfully fails to accurately and timely report a foreign financial account relating to such an account violates 31 U.S.C. § 5314 and can be subjected to a penalty "not to exceed $10,000." 31 U.S.C. § 5321(a)(5)(A)-(B).  In short, although the FBAR form has been designated for reporting foreign accounts, it is an undisclosed or improperly disclosed relationship that forms the basis of a violation of section 5314.  *See Boyd*, 2019 WL 1976472, at *1; *United States v. Shinday*, No. 2:18-cv-6891-CAS-Ex, 2018 WL 6330424 at *3-4 (C.D. Cal. Dec. 3, 2018); *United States v. Colliot*, No. AU-16-CA-01281-SS, 2018 WL 4178343 at *1 (W.D. Tex. Aug. 16, 2018).

This conclusion is confirmed by the reasonable cause exception found in 31 U.S.C. § 5321(a)(5)(B)(ii).  The exception, available only with respect to non-willful violations, provides that "[n]o penalty shall be imposed . . . with respect to any violation if (I) such violation was due to reasonable cause, and (II) . . . the *balance in the account* . . . was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii) (emphasis supplied).

The existence of a reasonable cause defense, in itself, shows that the non-willful penalty applies on an account-by-account basis.  One can easily imagine a situation where an accountholder has an account of which they are not and could not possibly have been aware and another account they did not report without having reasonable cause.  If Mr. Kaufman's argument is correct, so long as the accountholder has a valid reasonable cause defense with regard to the first account, whether or not they have reasonable cause for failing to disclose their other account becomes irrelevant.  Or perhaps an accountholder could proffer two non-

---

[1] For accounts over which the U.S. person has signature authority, they also must identify the account owner or owners.

4

overlapping reasonable cause defenses; again, an account of which they could not have been aware and another account of which they were aware but did not report for a different reason. By Mr. Kaufman's logic, so long as one of the defenses is valid, the accountholder cannot be assessed the penalty for either account. A better reading of the statute is that each account stands on its own: a non-willful failure to report it can be penalized up to $10,000 on its own and, if reasonable cause is shown for the failure to disclose a particular account, no penalty can be imposed for such account.

In any event, Congress's choice to use the singular forms of "account" and "balance" in § 5321(a)(5)(B)(ii), each proceeded by the definite article "the," is most naturally read as referring to the particular account to which the violation at issue relates. If, as Mr. Kaufman argues, the penalty applied to the FBAR *form*, Congress would not have used the language that it did. The same singular language of "account" and "balance" appears in § 5321(a)(5)(C)-(D), which governs the calculation of the penalty for willful violations—which Mr. Kaufman concedes is calculated per account not disclosed. (Doc. 65-2, p. 19-20). The *Boyd* court, based on this reasoning, found that the United States' reading of the statute—that the penalty applies per account, rather than per FBAR form—was "the more reasonable interpretation." *Boyd*, 2019 WL 1976472, at *4.

Similarly, the fact that willful violations can be penalized by the greater of $100,000 or 50% of the "balance in the account at the time of the violation" is further proof that the penalty applies per account. 31 U.S.C. § 5321(a)(5)(C)-(D). Mr. Kaufman argues that the explicit use of "account" shows that Congress intended to differentiate the willful penalty from the non-willful penalty. (Doc. 65-2, p. 19-20). Under his interpretation, the violation underlying the willful penalty is one for undisclosed accounts, and the violation underlying the non-willful penalty is

one for unfiled forms.  However, this interpretation misunderstands both the plain language of the statute and the history of § 5321.

The plain language of § 5321(a)(5) shows that the United States' interpretation is the correct one.  Subsection A authorizes the Secretary of the Treasury to "impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314."  Subsection B provides that "in general" the penalty imposed under subsection A is limited to $10,000, except as provided in Subsection C, which addresses willful violations.  In turn, Subsection C provides that, where the violation is willful, "the maximum penalty under subparagraph (B)(i)" shall be increased.  Subsection C explicitly provides that the penalty for a willful violation is the same penalty for a non-willful violation (i.e., the penalty under subparagraph (A)) but that the maximum amount of that penalty can be increased for willful violations.  Given that the penalty is the same, the underlying violation must also be the same.  Nothing in the text indicates that the term "violation" for purposes of Subsection C has a meaning different from the meaning of "violation" in Subsection A and, indeed, the cross-referencing of those two subparagraphs in subparagraph (B)(i) confirms that the violation is the same.  Subsection D states that "in the case of a violation involving a failure to report the existence of an account" the penalty can be assessed with regard to the balance in the account which was not reported (as stated in Subsection C, the penalty can be up to 50 percent of that balance).  Again, the willful variant of the penalty is assessed with reference to each account.  *See Shinday*, 2018 WL 6330424 at *3-4; *Colliot*, 2018 WL 4178343 at *1.  Given that the underlying violation is the same for willful and non-willful penalties, the non-willful penalty should be interpreted as applying to each undisclosed account.

Nothing in the BSA or its legislative history suggests that Congress intended to distinguish non-willful violations from willful ones, in terms of what conduct is being penalized. *See* H.R. Conf. Rep. 108-755 at *1667-68.  Before 2004, civil penalties were authorized only with respect to willful violations of the FBAR reporting requirements. Congress added a non-willful variant of the penalty after receiving estimates that "hundreds of thousands of taxpayers with offshore bank accounts [were] attempting to conceal income from the IRS." S. Rep. 108-192 at *108.  By removing the government's burden of demonstrating an accountholder acted willfully, Congress intended to "improve compliance with [the FBAR] reporting requirement." *Id.; see* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004).  The conduct that underlies the penalty—here, the failure to disclose financial accounts—is not different between willful and non-willful penalties; the only difference is whether such violation is willful (giving rise to the higher penalty) or non-willful.

Mr. Kaufman then argues that punishing a non-willful violator by the number of accounts not disclosed would be an absurd result.  That argument overlooks the purpose of the BSA.  In enacting the BSA, Congress recognized that the use of undisclosed foreign accounts by U.S. persons caused significant federal tax losses as well as a gaping disparity in the enforcement of the internal revenue laws. *See* 1970 U.S.C.C.A.N. at 4397-98 (observing that "[s]ecret foreign financial facilities" offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion").  As noted above, the purpose of creating the non-willful penalty in 2004 was to improve compliance with the reporting requirements. *See* S. Rep. 108-192 at *108; American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004).  Limiting the penalty to $10,000 per year, regardless of how many accounts are not reported would drastically limit the deterrent value of the penalty, as it

would incentivize accountholders with large amounts of money in multiple overseas accounts to be less diligent in determining whether they are obligated to disclose such accounts.

Mr. Kaufman's argument that determining penalties per account does not take into account the "blameworthiness" of the violation is similarly incorrect.  An accountholder who fails to exercise ordinary business care in determining whether they need to disclose their foreign accounts to the IRS commits a violation for each undisclosed account.  Failing to disclose ten accounts simply is not the same thing as failing to disclose one account, even where that failure is non-willful, and the penalty structure under § 5321 reflects this.

Mr. Kaufman then argues that an administrative rule of lenity should apply to the penalty statute and thus that it must be construed against the United States.  As Mr. Kaufman recognizes, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."  *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal citations and quotation marks omitted).  The court in *Boyd* rejected the accountholder's argument that a rule of lenity applies.  Although the court observed that section 5321 is "somewhat unclear as to whether the $10,000 negligence penalty applies per year or per account" it later concluded that "the statute contemplates that the relationship with each foreign financial account constitutes the non-willful FBAR violation."  *Boyd*, 2019 WL 1976472 at *4-5.  The same should hold here.

Finally, Mr. Kaufman argues that Department of the Treasury internal guidance support his interpretation of § 5321.  As an initial matter, administrative guidance does not have the force of a statute or regulation.  *See, e.g.*, *Jackson v. Tryon Park Apartments, Inc.*, Case No. 6:18-cv-06238 EAW, 2019 WL 331635, *4 (W.D.N.Y. Jan. 25, 2019).  As such, the guidance cannot overcome the

plain language of the statute and regulations which, as set forth above, establish that the non-willful penalty can be assessed per account not reported.

Moreover, Mr. Kaufman's argument relies on a selective reading of the guidance documents. The IRS's 2015 guidance (which Mr. Kaufman recognizes does not apply to him) says that "in most cases, examiners will recommend one penalty per open year, regardless of the number of unreported foreign accounts." Internal Revenue Manual ("I.R.M.") 4.26.16.6.4.1(1). This, of course, implies that there are other cases in which examiners can recommend penalties per account not reported. And, indeed, the I.R.M. goes on to state that "[f]or other cases, the facts and circumstances [. . .] may indicate that asserting a separate nonwillful penalty for each unreported foreign financial account, and for each year, is warranted" and that, in those cases, separate penalties can be assessed for each account. I.R.M. 4.26.16.6.4.1(3).

The language to which Mr. Kaufman points in the FBAR instructions states that "A person who is required to file an FBAR and fails to property file may be subject to a civil penalty not to exceed $10,000 per violation." BSA Electronic Filing Requirements for Report of Foreign Bank and Financial Accounts (FinCEN Form 114), *available at* https://www.fincen.gov/sites/default/files/shared/FBAR%20Line%20Item%20Filing%20Instructions.pdf (last accessed Jan. 13, 2020). Mr. Kaufman provides no support for his statement that the term "violation" in the instructions applies to the filing of a FBAR rather than to the failure to report an account, which is the "violation" referred to in the statute and regulations, as set forth above. Further, the instructions go on to say: "[i]f there is reasonable cause for the failure and the balance in the account is properly reported, no penalty will be imposed." *Id.* As argued above, the singular form of "account" is used, showing that the violation is the non-reporting or untimely reporting of each account. The language to which Mr. Kaufman points in the FinCEN

publication is similar: "A person who is required to file an FBAR and fails to properly file may be subject to a civil penalty not to exceed $10,000." *Financial Crimes Enforcement Network: Amendments to the Bank Secrecy Act Regulations—Reports of Foreign Financial Accounts*, 75 FR 844-01, 2010 WL 667290, at *8854 (Fed. 26, 2010).  And the following line—"If there is reasonable cause for the failure and the balance in the account is properly reported, no penalty will be imposed"—is the exact same, which shows, through the use of the singular form of "account," that the violation is the failure to report an account, and thus that a separate penalty can be assessed for each account not reported.

For the reasons stated above, Mr. Kaufman's motion for partial summary judgment should be denied.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Bradley A. Sarnell*
BRADLEY A. SARNELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-307-1038 (v)
202-514-5238 (f)
Bradley.A.Sarnell@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on this 15th day of January, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all ECF filers.  There are no parties that require conventional service.

                                            */s/ Bradley A. Sarnell*
                                            BRADLEY A. SARNELL
                                            Trial Attorney
                                            United States Department of Justice, Tax Division