UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 3:18-cv-787-KAD |
| v. | ) |
| ZVI KAUFMAN, | ) |
| Defendant. | ) |

**SURREPLY IN FURTHER OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Zvi Kaufman files this Surreply in Further Opposition to Plaintiff's Motion for Summary Judgment [DE 64]. The Government elected not to address Kaufman's affirmatively pleaded and forecasted reasonable cause defense in its initial Motion for Summary Judgment. Consequently, this Surreply constitutes Kaufman's first opportunity to address the Government's reasonable-cause argument.

It will proceed in three parts. Part I will briefly summarize Kaufman's argument in light of the reasonable cause standard, and demonstrate why summary judgment is not appropriate. Part II will address key flaws in the Government's Response that lead it to a contrary conclusion. And Part III will address the Government's caselaw on reasonable cause and illustrate why they support denying the Government's motion here.

**I.   The Court should deny the Government's Motion for Summary Judgment because Kaufman has forecasted sufficient evidence from which a reasonable juror could conclude that Kaufman acted with reasonable cause.**

Kaufman's liability turns on whether he acted with reasonable cause—that is, ordinary business care—with respect to his IRS filing obligations considering the totality of the circumstances. Such IRS filings include the FBAR forms at issue here. Taking all inferences in

{00151536.1}                                 ORAL ARGUMENT REQUESTED

Kaufman's favor, if a reasonable juror could conclude that Kaufman acted with reasonable cause, the Government's Motion for Summary Judgment must be denied. Here, ample facts exist that would permit a reasonable juror to find in Kaufman's favor.

Kaufman actions were eminently reasonable. Kaufman lived and worked exclusively in Israel for the 40 years during and preceding the Government's allegations. [Kaufman Aff. at ¶2.] During this time, he had no US business activities and no significant US tax obligations. [*Id..* at ¶13.] Nevertheless, he hired and paid a competent United States accountant to advise him on what he needed to do to comply with the IRS's filing requirements, as well as keep up with any US taxes he needed to pay.[1] [*Id.* at ¶6.] These competent US accountants knew that Kaufman lived and worked in Israel and that he had financial accounts in that country. [*Id.* at ¶9.] Nevertheless, they never advised him that he needed to file an FBAR form. [Kaufman Aff't ¶¶4, 14, 18.] And Kaufman's trust in his accountants was reasonable, especially regarding the 2008 to 2010 tax years at issue in this case. In the *decades* prior, Kaufman did not have a single issue with the IRS. [*Id.* at ¶11.]

If Kaufman's testimony and other evidence on this score is credited, Kaufman should prevail in this suit. Accordingly, a genuine question of material fact exists as to Kaufman's reasonable cause defense that precludes summary judgment in the Government's favor.

II. **The Government's contrary position misconstrues Kaufman's arguments.**

The Government vehemently denies that Kaufman has any reasonable cause defense, even if a jury credits Kaufman's evidence. But the Government's position depends on a misreading of

---

[1] Most American's living abroad simply ignore their obligations. Rettig, "Why the Ongoing Problem with FBAR Compliance?" J. of Tax Prac. & Proc.(Aug.–Sep. 2016) (observing that although an estimated 8.7 million non-military US citizens live outside of the United States in 2015, the Government received only 1,529,591 tax returns).

Kaufman's arguments. In this section, this surreply will address the most egregious of these mistakes.

        A. *Kaufman does not argue that his injuries alone constitute reasonable cause.*

Perhaps nothing illustrates the unreasonableness of the Government's positions in this case better than way it blithely dismisses Kaufman's suggestion that two catastrophic health events should be considered as relevant circumstances in evaluating the reasonableness of his conduct. Kaufman is elderly. In 2010, he suffered a heart attack that required surgery and multiple overnight hospital stays. Then, in 2011, he was run over by a car. He suffered significant head trauma and required additional hospitalization. As a result, he (and his doctors) determined that he could no longer work as a business executive. His mental faculties suffered. He could not concentrate. He had difficulty remembering ordinary tasks that he needed complete.[2] One might say he was unable to exercise the ordinary business care incumbent in the tax code's concept of "reasonable cause." Accordingly, Kaufman stopped looking for executive employment in 2010. And then, following his recovery from his heart attack, he declined a job offer in 2011 after he was hit by the car, believing he was incapable of performing the required duties. Kaufman's heart attack and car accident are serious events that a jury must consider as part of the totality of the circumstances in evaluating exercised reasonable care with respect to his FBAR filing obligations.

But the Government simply dismisses these facts. It does so largely by mischaracterizing Kaufman's argument. Kaufman does not, as Government suggests, argue that his medical history constitutes "reasonable cause" by itself. This appears to be what the Government is driving at when

---

[2] Kaufman details his health issues on page 3 of his responses to the Government's Third Interrogatories. A copy of these responses is attached to this Reply.

it cites *In re Carlson*, 126 F.3d 915, 923 (7th Cir. 2007)[3] for the proposition that "the type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for a taxpayer to comply." Rather, Kaufman argues that his medical history is merely an important circumstance that a factfinder should consider in evaluating the reasonableness of his actions. But it is these actions (Kaufman's decision to hire and pay a competent United States accountant to advise him on his IRS filing obligations), not the medical incidents themselves, that constitute reasonable cause.

> B. *Kaufman does not argue that his ignorance of the filing requirement alone constitutes reasonable cause.*

The Government similarly errs in mischaracterizing Kaufman's argument as "that he did not timely file his FBARs because he did not know of the filing requirement." Mere ignorance of the filing requirement is no excuse. But Kaufman argues that he acted with reasonable cause because he exercised ordinary business care in hiring competent United States CPAs to advise him of his filing obligations. He only failed to file because despite his efforts, these professionals did not advise him that he must file an FBAR form.[4] He filed everything that they advised him to. Kaufman's actions are consistent with ordinary business prudence. Every day, business executives rely on specialists to examine problems and report back on steps that need to be taken. It is

---

[3] *In re Carlson* is also a very different case from Kaufman's. In *Carlson*, a taxpayer attempted to argue that his psychiatric problems constituted reasonable cause for his failure *to pay his taxes*. Payment of taxes is a much more basic, serious, and universally known obligation than filing an FBAR form. But, more importantly, the Court discounted the extent of the *Carlson* taxpayer's issues. The Court observed that throughout his supposedly debilitating mental illness, the taxpayer continued to operate a profitable law firm, paid his employees, and properly withheld taxes from their wages. 126 F.3d at 923. This stands in stark contrast to Kaufman, who felt he had to stop working while he convalesced.

[4] It simply cannot be doubted that Kaufman would have filed an FBAR if his accountants told him he had to. Kaufman had nothing to lose by filing the FBAR—any tax loss was de minimus. And Kaufman did ultimately file his delinquent FBARs as soon as he learned of the filing requirement. He also fired these prior accountants who had dropped the ball.

{00151536.1 }    4

Kaufman's actions in hiring the competent specialists and following their advice—not Kaufman's mere ignorance of the law's requirements—that constitute reasonable cause.

### C. Kaufman does not argue that he delegated his duty to file an FBAR.

Finally, the most consequential of the Government's misapprehensions appears on page 6 of its Reply. There, the Government states, "contrary to Mr. Kaufman's argument, the case law is clear that the duty to file returns and reports is a nondelegable duty." [DE 66 at 6.] This is a fundamental misunderstanding of Kaufman's position that has tainted the Government's approach to this case from the early administrative proceedings before the IRS.

Kaufman *does not* argue that he somehow delegated his duty to file his IRS returns and reports to his US accountant. He acknowledges that the law makes this a nondelegable personal obligation. But the law does not require filing an FBAR, upon pain of penalty, no matter what. Rather, the law states that taxpayers will be penalized for failing to file an FBAR only if they do not exercise ordinary business care.  In making this choice, Congress recognized that taxpayers are human beings, and there may be cases where an FBAR form remains unfiled despite a taxpayer's reasonable care.

This Court should not allow the Government to deny Kaufman the benefit of the law by mischaracterizing his argument. Rather, the Court should follow the law, and recognize that a rational juror could conclude that Kaufman failed to file his FBAR forms even though he exercised ordinary business care.

### III.   Distinguishing the Government's Summary Judgment Case Law

Finally, this surreply will confront and distinguish the three cases that the Government argues support summary judgment in its favor: (1) *United States v. Agrawal*, Case No. 18-CV-80504, 2019 WL 6702114 (E.D. Wisc. Dec. 9, 2019); *Jarnagin v. United States*, 134 Fed. Cl. 368

(Fed. Cl. 2017), and *Moore v. United States*, Case No. C13-2063RAJ, 2015 WL 151007 (W.D. Wash. Apr. 1, 2015). In each of these cases, the courts granted summary judgment against a taxpayer on reasonable cause. But they did so because—unlike Kaufman—these taxpayers failed to come forth with evidence suggesting facts and circumstances from which a reasonable factfinder could infer that they acted with ordinary business care.

> A. United States v. Agrawal*, Case No. 18-CV-80504, 2019 WL 6702114 (E.D. Wisc. Dec. 9, 2019)*

The Government first relies upon *United States v. Agrawal*. In this case, a taxpayer named Ram Agrawal failed to disclose a foreign account on an FBAR for Tax Years 2006 through 2009. Agrawal lived and worked in the United States for 40 years and was a mathematics professor here. He opened his undisclosed foreign account at a Swiss bank to hold an approximately $1 million inheritance upon the death of his parents (who resided in India). He directed that Swiss bank to invest the funds only in non-US securities (which, per the bank's practice at the time would not trigger disclosure to US authorities). 2019 WL 6702114, at *3. And although for 2008 and 2009 Agrawal hired a CPA to handle his tax filings, he never disclosed the Swiss bank account to that CPA.[5]

Kaufman's case is very different. Unlike Agrawal, Kaufman has lived and worked for the past 40 years abroad in Israel, not the United States. He also never had any significant US tax liabilities, but still hired a US CPA to advise him concerning his IRS filing obligations. Further, all of Kaufman's Israeli accounts were part of his ordinary course of business and living in Israel.

---

[5] Of note, Agrawal submitted affidavits in which he stated that he did inform his CPA of the Swiss bank account. However, the affidavits contradicted Agrawal's prior sworn testimony and the court disregarded them. Kaufman, by contrast, has consistently stated that he informed his CPAs that he had Israeli bank accounts and that moreover these bank accounts were obvious from the information about his work reported on his returns.

Contrary to Agrawal, Kaufman never created a secret Swiss bank account and instructed the bank not to invest in US Securities.

Most importantly, however, Kaufman *did* disclose his Israeli bank accounts at issue to his CPA. Agrawal concealed them. Agrawal could therefore not reasonably trust his CPA to advise him about his reporting obligations with respect to the account. And the Court accordingly granted Summary Judgment on these facts. But because Kaufman told his accountants that he had Israeli financial accounts, Kaufman could reasonably depend upon them to tell him of any IRS filing obligations that ownership entailed.

### B. Jarnagin v. United States, *134 Fed. Cl. 368 (Fed. Cl. 2017)*

Second, the Government relies on *Jarnagin v. United States*, 134 Fed. Cl. 368 (2017). In *Jarnagin*, the taxpayers Larry and Linda Jarnagin argued that they had reasonable cause for their non-willful failure to fail FBAR forms for 2006 through 2009 disclosing their interest in Canadian bank accounts. On summary judgment, the court determined that they did not.

In so holding, the *Jarnagin* Court made the following significant observations. First, the Jarnagins were dual US and Canadian citizens who spent significant portions of each year in both countries. 134 Fed. Cl. at 371. Second, the Jarnagins had extensive business operations in the United States and Canada, including large real estate deals and actively managed shopping centers, apartment complexes, and a night club. *Id.* And, third, the Jarnagins hired CPAs to handle their bookkeeping and file their tax returns but—and the court made this explicit—they *did not* hire these CPAs to advise them about their FBAR filing requirements. *Id.* at 378.

The following paragraph articulates the crux of the *Jarnagin* Court's decision:

> The Jarnagins have owned multiple businesses in multiple states and in two countries, yet they apparently did not have any substantive discussions with any of their American accountants about their taxes, did not review their tax returns, and did not specifically identify their Canadian bank account to their

> American accountants or ask for any advice with respect to that account. Further, while the Jarnagins relied upon their accountants to fill out their tax returns, **the record contains no evidence that they otherwise sought advice (legal or otherwise) concerning any obligations that they might have had to file reports or make disclosures concerning their foreign assets or businesses.**

*Id.* (emphasis added).

*Jarnagin* thus stands in stark contrast to Kaufman's case. Kaufman had no US business operations and no significant US tax liabilities. Rather, he had lived and worked in Israel as a salaried employee for almost 40 years before the tax years at issue in this case. Nevertheless, Kaufman hired a US CPA to for the express purpose of advising him of his IRS filing obligations and to help him meet them. Importantly, Kaufman affirms in his affidavit that he hired CPA Foss to advise him on complying with *all his IRS filing obligations*, and that Manzi Pino assumed this relationship when it acquired Foss's firm after Foss died. This would include the obligation to tell Kaufman what filings the IRS required due to his ownership of an Israeli financial account. Finally, unlike the Jarnagins, Kaufman reviewed his returns. But when he saw that his CPA had checked "no" in response to a question asking whether he had foreign financial accounts, he believed that question referred to accounts foreign *to him*—that is, accounts outside of Israel. He believed this, in part, because he had told his accountants that he had Israeli financial accounts.

    C.  Moore v. United States*, Case No. C13-2063RAJ, 2015 WL 151007 (W.D. Wash. Apr. 1, 2015)*

Finally, the Government points to *Moore v. United States*, Case No. C13-2063RAJ, 2015 WL 151007 (W.D. Wash. Apr. 1, 2015). In that case, the Government assessed $40,000 in non-willful FBAR penalties for taxpayer James Moore's failure to file FBAR forms for tax years 2005 through 2008. Mr. Moore was a United States citizen who held a Swiss bank account that he had created in connection with a Caribbean real estate development. Moore argued that he had reasonable cause for failing to file an FBAR because he mistakenly believed that because his

account was technically held by a corporation that he controlled (rather than held individually in Moore's own name), he did not have to file an FBAR.

The court rejected this argument because it determined that Moore had no reasonable basis for having this belief. Notably, Moore testified that although he discussed his real estate investment with a Bahamian law firm, that firm gave him "no advice about United States law" at all. *Id.*, at *5. Further, Moore failed entirely to inform his tax return preparer that he had a Swiss bank account.

But again, Kaufman is far different. Unlike Moore and his Bahamian law firm, Kaufman did competent US CPAs to advise him as to his IRS filing requirements. And unlike Moore, Kaufman told his CPAs that he had Israeli financial accounts.

## CONCLUSION

For the foregoing reason, the Government's Motion for Summary Judgment must be denied. A reasonably jury could conclude from the evidence that Kaufman has forecasted that he acted with ordinary business care.

Date: January 21, 2020                    Respectfully Submitted,

/s/ Jeffrey M. Sklarz
Jeffrey M. Sklarz (ct20938)
Green & Sklarz, LLC
700 State Street, Suite 100
New Haven, Connecticut 06511
(203) 285-8545
jsklarz@gs-lawfirm.com

Jeffrey A. Neiman (admitted *pro hac vice*)
Marcus Neiman & Rashbaum LLP
100 Southeast Third Avenue, Suite 805
Ft. Lauderdale, Florida 33394
(954) 462-1200
jneiman@mnrlawfirm.com

{00151536.1 }                                   9

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below a copy of the foregoing was served by CM/ECF and/or mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Date:   January 21, 2020                                              /s/ Jeffrey M. Sklarz