## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:18-CV-00787 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZVI KAUFMAN, | ) | |
| *Defendant*. | ) | JANUARY 11, 2021 |

### MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

Through this action, the United States of America seeks to enforce civil penalties assessed against Zvi Kaufman ("Kaufman") for his non-willful failure to file timely reports of his financial interest in or signatory authority over certain foreign bank accounts in three successive years—2008, 2009, and 2010. Pending before the Court are the cross-motions for summary judgment filed by the United States of America (the "Government") and Kaufman. The Government seeks summary judgment as to Kaufman's liability for the civil monetary penalties it has assessed for his late filing, while Kaufman denies any liability and alternatively seeks a determination as to the statutory cap on civil monetary penalties in this context. Because of the interrelated nature of the issues presented in the cross-motions, the Court issues a single memorandum of decision. For the reasons set forth herein, the Government's motion is GRANTED in part and DENIED in part and Kaufman's motion is GRANTED.

**Background**

**Facts[1]**

Kaufman, a former managing director of a pharmaceutical company, is a United States citizen who has resided in Israel since 1979. (Plf.'s SMF at ¶ 1; Def.'s SMF at ¶ 3; Response to Interrogatory No. 18, ECF No. 66-8 at 2.) During the years 2008, 2009, and 2010, Kaufman had a financial interest in or signatory authority over several financial accounts in Israel ("foreign financial accounts"). (Plf.'s SMF at ¶ 2.) Specifically, he had thirteen foreign financial accounts in 2008, twelve in 2009, and seventeen in 2010. (Plf.'s SMF at ¶¶ 3–5.) During 2008, 2009, and 2010, the aggregate balance of the foreign financial accounts exceeded $10,000. (Plf.'s SMF at ¶ 6.) As a result, Kaufman was required to file a Form TD F 90-22.1, entitled "Report of Foreign Bank and Financial Accounts" and commonly referred to as an "FBAR," for each of those years. 31 C.F.R. § 103.24 (2009); 31 C.F.R. § 1010.350 (2011).[2] Kaufman's FBARs were due on June 30 of each successive calendar year. 31 C.F.R. § 103.27(c) (2009); 31 C.F.R. § 1010.306(c) (2011). It is undisputed that Kaufman did not file FBARs by those deadlines; instead, he filed his FBARs for the three years at issue on May 15, 2012. (Plf.'s SMF at ¶ 6; Kaufman Aff. at. ¶ 3.)

On September 24, 2015, the Internal Revenue Service ("IRS") assessed penalties against Kaufman for his non-willful failure to file timely FBARs—$42,249 for the 2008 FBAR, $42,287 for the 2009 FBAR, and $59,708 for the 2010 FBAR. (Plf.'s SMF at ¶ 7.) At or near the time the FBAR penalties were assessed, the IRS sent a letter to Kaufman demanding payment. (Plf.'s SMF at ¶ 7.) The Government maintains that, as of December 6, 2019, Kaufman owes a total of

---

[1] The relevant facts are taken from ECF No. 64, Plaintiff's Local Rule 56(a)(1) Statement ("Plf.'s SMF") and ECF No. 65-1, the Defendant's Local Rule 56(a)(2) Statement ("Def.'s SMF"). All of the facts set forth herein are undisputed unless otherwise indicated.

[2] The relevant regulations were renumbered in 2011. *See* Transfer and Reorganization of Bank Secrecy Act Regulations, 75 Fed. Reg. 65806 (Oct. 26, 2010). The parties do not dispute any substantive difference between these versions, and the Court cites to both the original and renumbered regulations because both the originally numbered regulations and the renumbered regulations were effective during the period at issue. *See id.*

$144,244.00 on the principal for the outstanding FBAR penalties, $36,373.20 in late-payment penalties, and $6,062.20 in interest.[3] (Plf.'s SMF at ¶ 8.) Kaufman disputes that he has any liability for the untimely FBAR filings and alternatively disputes the Government's calculation of the penalties assessed. On this latter issue, he argues that the maximum amount of civil monetary penalties that can be imposed for his non-willful violations is $10,000 for each year a FBAR was not filed for a total of $30,000. (Def.'s Opp. Mem. at 1, ECF No. 65-2.) Additional facts will be set forth as necessary.

**Standard of Review**

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the

---

[3] Kaufman objected to this factual assertion on the grounds that it is unsupported by the record citation, but this factual assertion is supported by the declaration of debt filed by the Government. (ECF No. 64-9 at ¶ 4.)

nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

### The Government's Motion for Summary Judgment

The Government seeks summary judgment as to Kaufman's liability arising out of his non-willful failure to file timely FBARs for 2008, 2009 and 2010. Kaufman does not dispute that he

failed to file timely FBARs for these years, but he contends that summary judgment is inappropriate because there are triable issues of fact with respect to whether his failure was the result of "reasonable cause," which he asserts by way of affirmative defense.

Section 5321 of Title 31 of the United States Code authorizes the Secretary of the Treasury (the "Secretary") to impose civil monetary penalties on anyone who fails to file a timely and accurate FBAR. 31 U.S.C. § 5321(a)(5)(A) (authorizing civil monetary penalties for violation of 31 U.S.C. § 5314); *see also* 31 U.S.C. § 5314(a) (establishing reporting requirement). Section 5321 also contains a reasonable cause defense, which provides in pertinent part:

> No penalty shall be imposed . . . with respect to any [non-willful] violation if . . . (I) such violation was due to reasonable cause, and (II) the amount of the transaction or the balance in the account at the time of the transaction was properly reported.

31 U.S.C. § 5321(a)(5)(B)(ii). The phrase "reasonable cause" is not defined in the relevant statutes and regulations, nor has the Court located any decision by a Circuit Court of Appeals discussing the meaning of this phrase as used in Section 5321(a)(5)(B).

Courts nevertheless are not left without guidance. The "reasonable cause" defense also exists in the Tax Code, and the parties, like the few courts that have addressed this issue, agree that the Tax Code is instructive. *E.g.*, *Jarnagin v. United States*, 134 Fed. Cl. 368, 376 (2017); *Moore v. United States*, No. C13–2063RAJ, 2015 WL 1510007, at *4 (W.D. Wash. Apr. 1, 2015); *see also Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (stating that "Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations").

Specifically, courts look to 26 U.S.C. § 6651 and 26 U.S.C. § 6664 for guidance. *E.g.*, *Jarnagin*, 134 Fed. Cl. at 376–77; *Moore*, 2015 WL 1510007, at *4. Section 6651 is the penalty

provision for failure to file tax returns or pay taxes. With respect to the reasonable cause defense, the applicable regulation provides:

> If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.

26 C.F.R. § 301.6651-1(c)(1). In *United States v. Boyle*, 469 U.S. 241 (1985), the Supreme Court approved this definition as being consistent with the 70-year-old understanding of "reasonable cause" in the Tax Code. *Id.* at 245–46. The *Boyle* court further held that retention of an attorney or accountant does not absolve the taxpayer of his duty to comply with his tax obligations. *Id.* at 249–50. While a taxpayer may reasonably rely on the advice of an accountant or attorney on a matter of tax law, "that reliance cannot function as a substitute for compliance with an unambiguous statute." *Id.* at 251. "It requires no special training or effort to ascertain a deadline and make sure that it is met. The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." *Id.* at 252.

A similar standard to that articulated in *Boyle* is applied in the context of Section 6664 which addresses the underpayment of taxes. Where taxes have been underpaid, no penalty is imposed "if it is shown that there was a reasonable cause for such portion [of underpayment] and that the taxpayer acted in good faith with respect to such portion." 26 U.S.C. § 6664(c)(1). Where a taxpayer asserts that the underpayment resulted from a "reasonable cause," the applicable regulation explains:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. . . . Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. . . . Reliance . . . on the advice of a professional tax advisor or an appraiser does not necessarily demonstrate reasonable cause and good faith. . . .

26 C.F.R. § 1.6664-4.

**Additional Facts**

The following additional undisputed facts are relevant to Kaufman's reasonable cause defense. Since at least 1974, Kaufman has used a certified public accountant ("CPA") in the United States to prepare his U.S. tax returns. (Def.'s SMF at ¶¶ 7, 17.) Through 2004, Larry Foss prepared Kaufman's tax returns. When Foss died in February of 2005, his accounting business was acquired by Manzi-Pino & Co., P.C. ("Manzi Pino"). (Def.'s SMF at ¶ 17.) Christopher Devine and Roger Stebbins, CPAs at Manzi Pino, were involved in the preparation of Kaufman's tax returns for the years in question. The record reveals the following communications between Kaufman, Devine, and Stebbins concerning Kaufman's interests in any foreign financial accounts and the FBAR filing requirement.

When preparing Kaufman's 2008 tax return, Devine asked Kaufman whether he had any "foreign accounts," and Kaufman responded that he did not. (Devine Depo. at 33, 48, Plf.'s Ex. M, ECF No. 66-7.) In response, Devine and Stebbins asked Kaufman how he was paying his bills abroad if he did not have any foreign financial accounts. (Stebbins Depo. at 22, Plf.'s Ex. O, ECF No. 66-9.) Kaufman responded that he used a brokerage account in the United States. (*Id.* at 22–23; *see also id.* at 24–25.) Accordingly, Devine indicated on Schedule B of Kaufman's tax return that Kaufman did not have any foreign financial accounts. (2008 Tax Return at Sch. B., Q. 7a, Plf.'s Ex. G at 4, ECF No. 66-1.) Specifically, Devine checked the "No" box for Question 7a on Schedule B, which asks:

> At any time during 2008, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account. See instructions for exceptions and filing requirements for Form TD F 90-22.1.

(2008 Tax Return at Sch. B., Q. 7a.) Even though Kaufman reported that he did not have any foreign financial accounts, when Stebbins sent Kaufman his tax return, he included a cover letter that cautioned:

> DON'T FORGET THAT THE US DEPARTMENT OF TREASURY FORM TD F 90-22.1, REPORT OF FOREIGN BANK ACCOUNT AND FINANCIAL ACCOUNTS, SHOULD BE COMPLETED AND FILED IF REQUIRED. THIS FORM CAN BE DOWNLOADED AT IRS.GOV.
>
> Please be sure to call if you have any questions.

(2008 Tax Return Cover Letter, Plf.'s Ex. G at 1, ECF No. 66-1.) On June 12, 2009, Devine further sent Kaufman a reminder about the upcoming FBAR filing deadline:

> I just want to remind you that US Department of Treasury Form TD 90-22.1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/09 if you are required to file. The form can be downloaded at IRS.Gov[.]

(Plf.'s Ex. J; *see also* Kaufman Aff. at ¶ 22.)  Kaufman never followed up with Devine or Stebbins concerning these warnings or whether he was required to file a Form TD F 90-22.1. (Devine Depo. at 43.) Nor did Kaufman seek clarification from Devine as to why he answered "No" to Question 7a even though he had several financial accounts in Israel.

When preparing Kaufman's 2009 tax return, Devine again asked Kaufman whether he had any "foreign accounts," and Kaufman again said that he did not. (Kaufman Aff. at ¶ 19; Devine Depo. at 48.) Accordingly, Devine again checked the "No" box for Question 7a on Schedule B of Kaufman's 2009 tax return. (2009 Tax Return at Sch. B., Q. 7a, Plf.'s Ex. H at 3, ECF No. 66-2.) Notwithstanding, Devine sent Kaufman a reminder about the FBAR filing deadline on June 29, 2010, which stated in pertinent part:

> . . . . I want to remind you that US Department of Treasury Form TD 90-22.1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/10 if you are required to file. The form can be downloaded at IRS.Gov.

(Plf.'s Ex. K.) Kaufman did not thereafter seek clarification from Devine as to why he answered "No" to Question 7a or whether he was required to file a Form TD F 90-22.1.

In 2011, Kaufman received an extension for his 2010 tax return. (*See* Def.'s Response to Interrogatory No. 23.a, ECF No. 66-8.) On June 23, 2011, and prior to preparing Kaufman's 2010 tax return, Devine sent Kaufman a reminder about the FBAR deadline, which stated:

> . . . . I want to remind you that US Department of Treasury Form TD 90-22.1, Report of Foreign Bank Account and Financial Accounts, is due 6/30/11 if you are required to file. The form can be downloaded at IRS.Gov.

(Plf.'s Ex. L.) Kaufman did not reach out to Devine regarding whether he was required to file a TD F 90-22.1. In September of 2011, however, Kaufman realized during a conversation with Devine that he needed to file an FBAR. (Kaufman Aff. at ¶ 23; *see also* Devine Depo. at 102–103.) It was at this time that Kaufman first disclosed the existence of his foreign financial accounts to Manzi Pino.[4] Thereafter, Devine completed Kaufman's 2010 tax return, and he indicated on Question 7a on Schedule B that Kaufman had financial accounts in Israel. (2010 Tax Return at Sch. B., Q. 7a, Plf.'s Ex. I, ECF No. 66-3.) On May 15, 2012, Kaufman filed FBARs for the years 2008, 2009, and 2010. (Plf.'s SMF at ¶ 6; Kaufman Aff. at ¶ 3.)

---

[4] Kaufman admitted in his sworn interrogatory responses that he did not disclose the existence of any foreign financial accounts to Manzi Pino "before approximately September of 2011" because "[he] was not aware that the information was relevant to his IRS reporting obligations." (Def.'s Response to Interrogatory Nos. 25–27, ECF No. 66-8.) In support of his opposition to the Government's motion, however, Kaufman submitted an affidavit in which he asserts that he "disclosed to CPA Foss and Manzi Pino that [he] had Israel accounts, and . . . the fact that [he] had Israeli accounts was apparent. . . ." (Kaufman Aff. at ¶ 19.) The Government challenges whether this assertion can create a triable issue of fact because it contradicts his sworn interrogatory responses. A party is prohibited "from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *In re Fosamax Products Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013). Th principle applies with equal force to interrogatory responses. *Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) (disregarding factual claims "where those claims contradict statements made previously by Reisner at his deposition, in his affidavits, and in response to defendants' interrogatories."); *Acas v. Connecticut Dep't of Correction*, No. 06-cv-01855 (JBA), 2008 WL 4479111, at *8 (D. Conn. Sept. 29, 2008) ("Mr. Acas's own affidavit will not be permitted to oppose summary judgment because it directly contradicts his prior sworn deposition and interrogatory responses. . . ."). The Court agrees with the Government that Kaufman's affidavit should be disregarded to the extent it contradicts his sworn responses to the Government's interrogatories.

In support of his reasonable cause defense, Kaufman also relies on two medical events that occurred during the relevant period. On February 11, 2010, Kaufman suffered a heart attack and was intermittently hospitalized in the months that followed. (Kaufman Aff. at ¶ 26.) On January 13, 2011, Kaufman was struck by a car as a pedestrian and suffered head trauma. (*Id.* at ¶ 27.) As a result of these incidents, Kaufman maintains that he now suffers from deficiencies in cognition, attention, and memory. (*Id.* at ¶ 28.)

Relying on the authorities discussed above, several courts, in the context of defendants who failed to file FBARs, have rejected a reasonable cause defense at the summary judgment stage.[5] *United States v. Agrawal*, No. 18-C-0504, 2019 WL 6702114, at *5 (E.D. Wis. Dec. 9, 2019); *United States v. Ott*, No. 18-cv-012174, 2019 WL 3714491, at *3 (E.D. Mich. Aug. 7, 2019); *Jarnagin*, 134 Fed. Cl. at 379; *Moore*, 2015 WL 1510007, at *14. In each of these cases, as is the case here, the defendants failed to report their foreign financial accounts on Schedule B and further failed to question whether their negative response to Question 7a should be different in light of their interest in or control over one or more foreign financial accounts. *Agrawal*, 2019 WL 6702114, at *4–*5; *Jarnagin*, 134 Fed. Cl. at 378; *Moore*, 2015 WL 1510007, at *5–*6; *see Ott*, 2019 WL 3714491, at *2 (noting that there was no evidence defendant informed advisor completing her tax returns of foreign financial accounts). Each of these defendants, as is the case here, also had an American tax preparer at some point during the period in dispute. *Agrawal*, 2019 WL 6702114, at *1; *Ott*, 2019 WL 3714491, at *2; *Jarnagin*, 134 Fed. Cl. at 372–73; *Moore*, 2015 WL 1510007, at *6. Yet there was no evidence that any of them made any inquiries concerning their reporting obligations in the United States with respect to their foreign financial accounts. *Agrawal*, 2019 WL 6702114, at *4; *Ott*, 2019 WL 3714491, at *2; *Jarnagin*, 134 Fed. Cl. at 377;

---

[5] The Court has not located, and Kaufman has not identified, any cases in which a court concluded that there was a triable issue of fact concerning a defendant's reasonable cause defense in the FBAR context.

*Moore*, 2015 WL 1510007, at *6. To the contrary, the defendants in these cases either failed to mention their foreign account(s) to their tax preparer; *Ott*, 2019 WL 3714491, at *2 (noting that defendant "fails to even suggest that she informed the advisor of these [foreign financial] accounts"); *Jarnagin*, 134 Fed. Cl. at 373 ("The Jarnagins never expressly informed [their accountants] that they maintained a bank account in Canada."); or affirmatively represented to their tax preparer that they did not have any foreign accounts; *Agrawal*, 2019 WL 6702114, at *1 (defendant testified that he told his CPA he had no foreign financial accounts); *Moore*, 2015 WL 1510007, at *7 (plaintiff indicated he did not have any interest in or signatory authority over a foreign financial account in annual questionnaire). Under these circumstances, none of the courts were persuaded that the defendants could establish that they acted with reasonable care—that is, with ordinary business care and prudence—in determining their reporting obligations.

This case presents nearly identical circumstances to those presented in *Agrawal*, *Jarnagin*, *Moore*, and *Ott*. There is no dispute that Kaufman knew that he had an interest in or signatory authority over multiple financial accounts in Israel. Yet, Kaufman failed to undertake any efforts to ascertain his reporting obligations in the United States for these accounts prior to September of 2011. And his failure in this regard occurred notwithstanding multiple steps along the road which would have alerted a person exercising ordinary business care and prudence to his duty to report his foreign financial accounts to the United States. Each year Devine asked Kaufman whether he had any foreign accounts. Each year someone at Manzi Pino sent Kaufman a reminder about the FBAR filing deadline, which included a reference to the form number and the title of this form. Each year Devine completed a Schedule B for Kaufman's tax returns, which includes a question about whether the taxpayer has any foreign financial accounts and a reference to Form TD F 90-22.1. Indeed, the record evidence not only evinces very little, if any, "ordinary business care and

prudence," but it could support (though not sought) an inference of willfulness. *See United States v. Garrity*, 304 F. Supp. 3d 267, 273 (D. Conn. 2018) (finding that reckless conduct is sufficient to justify a penalty for a willful violation of Section 5314 pursuant to 31 U.S.C. § 5321(a)(5) and collecting cases); *see also United States v. Flume*, 390 F. Supp. 3d 847 (S.D. Tex. 2019) (finding a willful violation of Section 5314 where both the defendant's accountants had given the defendant reminders about foreign accounts and the defendant engaged in suspicious financial transactions).

Nonetheless, Kaufman asserts that there are triable issues of fact concerning his reasonable cause defense. The Court is not persuaded. Kaufman relies on the fact that he retained an American CPA each year, and he asserts that Manzi Pino should have advised him of his reporting obligation more directly.[6] This argument suffers from two flaws. First, retention of a CPA cannot by itself support a reasonable cause defense because the duty to file a timely FBAR lies with the person obligated to file the report. *See Boyle*, 469 U.S. at 250 ("That the attorney, as the executor's agent, was expected to attend to the matter [of filing the tax return] does not relieve the principal of his duty to comply with the statute."). Second, there is no evidence that Manzi Pino had the information necessary to advise Kaufman of his reporting obligation prior to September of 2011. To the contrary, Kaufman specifically told Devine that he did not have any foreign accounts. And when Kaufman reported having no foreign financial accounts in 2008, Devine and Stebbins were sufficiently confused that they followed up with Kaufman to find out how he was paying his bills abroad. Kaufman responded that he was using an American brokerage account to pay his bills. Whether true or not, his answer was misleading as to the whether he had accounts in Israel.

---

[6] Kaufman also emphasizes that Larry Foss knew about his financial accounts in Israel and never told him to file an FBAR. Kaufman contends that this is somewhat unsurprising given the Government's "anemic efforts" to make the FBAR requirement known. (Def.'s Br. at 9.) But what Foss did or did not know about the FBAR requirement is irrelevant. Foss was not Kaufman's CPA during the years in question, Manzi Pino was, and it is apparent from the record that the CPAs at Manzi Pino were well aware of the FBAR filing requirement.

Kaufman attempts to deflect the damaging nature of these facts by averring that he perceived Devine's questions about "foreign" accounts to mean accounts foreign to him—*i.e.*, accounts not located in the United States or Israel. First, this is a wholly unreasonable assumption given that the questions were being asked by an American CPA in the context of preparing U.S. tax returns. This assertion is also irreconcilable with Kaufman's recognition that the term "foreign" as it appears on his U.S tax returns includes Israel. Kaufman identifies Israel as a foreign country on Form 1116, which allows a taxpayer to seek a Foreign Tax Credit, and on Forms 2555 and 2555 EZ, which are used for reporting foreign earned income and seeking an exclusion for such income. It was therefore unreasonable to assume that the term "foreign" in Question 7a did not include Kaufman's accounts in Israel.

But even if this were a reasonable assumption, it does not mitigate the fact that Kaufman never questioned whether he was required to file a Form TD F 90-22.1 when, each year, he received reminder notifications about the impending filing deadline. Although the average person might not know what a "Form TD F 90-22.1" refers to, the correspondence from Manzi Pino specifically identified the form as being a "Report of Foreign Bank Account and Financial Accounts." If he was not actually aware of the requirement, this correspondence should have signaled to Kaufman that the United States has a reporting requirement for foreign bank accounts and foreign financial accounts. (Plf.'s Ex. G (emphasis omitted); Plf.'s Exs. K–L.) It is also apparent from Question 7a that the Form TD F 90-22.1 relates to foreign financial accounts, from not only the substance of the question but also the section heading in which the question appears within Schedule B—"Foreign Accounts and Trusts." Although the record evidence is unclear as to whether Kaufman read his tax return each year, he is charged with constructive knowledge of the contents of his tax returns and, therefore, of Question 7a. *Jarnagin*, 134 Fed. Cl. at 378.

Lastly, Kaufman asserts that significant medical issues in 2010 and 2011 impaired his ability to file timely FBARs. Specifically, Kaufman suffered a heart attack in early 2010 and was in a motor vehicle accident in 2011. These events, though unfortunate, do not create a triable issue of fact. Because Kaufman maintains that he was unaware of his FBAR filing obligation until September of 2011, neither of these events could have impacted Kaufman's filing—even in their absence, Kaufman would not have filed timely FBARs for the years in question.

For all these reasons, the Court concludes that there are no triable issues of fact concerning Kaufman's reasonable cause defense. The Government's motion for summary judgment on the issue of liability is therefore granted.

**The Defendant's Motion for Summary Judgment**

In his motion for summary judgment, Kaufman seeks a determination concerning the statutory cap for civil monetary penalties for non-willful FBAR violations as set forth in 31 U.S.C. § 5321. Kaufman argues that the maximum penalty that may be imposed under the statute for non-willful FBAR violations is $10,000 per form that is untimely or inaccurately filed. The Government argues that the statutory cap of $10,000 applies to each account untimely or inaccurately reported. This is a matter of first impression in the Second Circuit and much of the country. Only two district courts have addressed this issue, and they reached contrary conclusions. *United States v. Bittner*, 469 F. Supp. 3d 709 (E.D. Tex. 2020) (holding statutory cap applies on a per form basis), *appeal docketed* No. 20-40597 (5th Cir. Sept. 11, 2020); *United States v. Boyd*, No. CV 18-803-MWF (JEMx), 2019 WL 1976472 (C.D. Cal. Apr. 23, 2019) (holding statutory cap applies on a per account basis), *appeal argued* No. 19-55585 (9th Cir. Sept. 1, 2020).

The answer to this question is reached through application of the principles of statutory construction. Section 5314, also known as the Bank Secrecy Act, provides that the Secretary "shall

require a resident or citizen of the United States . . . to keep records, file reports, or keep records and file reports, when the resident, [or] citizen . . . makes a transaction or maintains a relation for any person with a foreign financial agency."[7] The obligation to file FBARs is imposed by the Secretary of the Treasury pursuant to Section 5314. Section 5321(a)(5)(A) of Title 31 authorizes the Secretary of the Treasury "[to] impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A). "In general – Except as provided in subparagraph (C) [governing willful violations] . . . the amount of any civil penalty imposed . . . shall not exceed $10,000." *Id.* at § 5321(a)(5)(B)(i) (emphasis omitted).

"[The] starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)). As indicated, the parties dispute whether the violation being referred to in Section 5321(a)(5)(A) is the failure to file a timely and accurate FBAR or the failure to report one or more foreign financial accounts in a timely and accurate fashion. Kaufman cites to the language in Section 5314 and argues that it is principally focused on the filing of reports, which means that the violation referenced in Section 5321(a)(5)(A) lies in the failure to file a report in the manner prescribed by the Secretary. The Government, in contrast, focuses on the fact that the details required by Section 5314, *see* n. 6 *supra*, necessarily require the report to disclose information on an account-by-account basis. Therefore, the Government argues, the violation lies in the failure to disclose each foreign financial account timely and accurately on the prescribed form. Both parties' interpretations of the term "violation" is reasonable. Accordingly, this issue

---

[7] Section 5314 further provides that the records and reports must contain: "(1) the identity and address of participants in a transaction or relationship. (2) the legal capacity in which a participant is acting. (3) the identity of real parties in interest. [and] (4) a description of the transaction." 31 U.S.C. §5314(a).

cannot be resolved by a "plain meaning" analysis of the statutory text and the Court looks elsewhere within the statute for guidance.

In this vein, both parties rely on other language in Section 5321 to support their respective interpretations of the penalty provision for non-willful violations. The first is the provision regarding the imposition of civil penalties for willful violations of Section 5314. For willful violations, the statute allows a civil penalty of the greater of $100,000 or "50 percent of the amount determined under subparagraph (D)." 31 U.S.C. § 5321(a)(5)(C)(i). Subparagraph (D) provides that the amount determined is, "in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, *the balance in the account* at the time of the violation." 31 U.S.C. § 5321(a)(5)(D)(ii) (emphasis added).

Both parties also cite to and rely upon the language used regarding the reasonable cause defense. As discussed above, no penalty is imposed if the violation was due to reasonable cause. But this defense requires that "the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii)(II). The Government argues that these references to individual accounts and account balances reflect congressional intent that a violation occurs with respect to each account untimely or inaccurately reported. Kaufman argues that the distinction between penalties for willful violations and non-willful violations reveals exactly the opposite. The Court agrees with Kaufman.

The reference to "balance in the account" in the willfulness penalty provision shows that "Congress clearly knew how to make FBAR penalties account specific." *Bittner*, 469 F. Supp. 3d at 719. Notably, Congress imposed penalties for willful violations long before it amended the Bank

Secrecy Act in 2004 to add the provision for non-willful penalties.[8] "Congress therefore had a template for how to relate an FBAR reporting penalty to specific financial accounts, and the fact that it did not do so for non-willful violations is persuasive evidence that it intended for the non-willful penalties not to relate to specific accounts." *Id*. (citing *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.")).

The reference to "balance in the account" in the reasonable cause defense is similarly meaningful. The reasonable cause defense and the penalty provision for non-willful violations "are part of the exact same statutory scheme, passed by the exact same Congress at the exact same time." *Bittner*, 469 F. Supp. 3d at 719. The reasonable inference to be drawn, therefore, is that Congress intentionally omitted reference to "account" or "balance in the account" when drafting the penalty provision for non-willful violations. *Id*. (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration omitted; citation omitted; internal quotation marks omitted)).

It is also significant that Section 5314 largely defers to the Secretary to determine how the reporting requirement for foreign financial accounts will operate. 31 U.S.C. § 5314(a). As a result, "the [Bank Secrecy] Act's civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no

---

[8] A detailed overview of the history of the Bank Secrecy Act and the FBAR penalty provisions can be located in *United States v. Kahn*, No. 17-cv-07258 (KAM) (VMS), 2019 WL 8587295, at *4–*7 (E.D.N.Y. Sept. 23, 2019). *See also Jarnagin*, 134 Fed. Cl. at 369–70 (describing why Congress enacted the Bank Secrecy Act).

penalties on anyone." *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 26 (1974). Here, the regulations promulgated by the Secretary require "person[s] subject to the jurisdiction of the United States" to file an annual report (or FBAR) concerning any foreign financial accounts that they have "a financial interest in, or signature or other authority over." 31 C.F.R. § 103.24 (2009); 31 C.F.R. § 1010.350 (2011). FBARs must be filed "on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 103.27(c) (2009); 31 C.F.R. § 1010.306(c) (2011). Significantly, the trigger for the reporting obligation is the aggregate account balance in a person's foreign financial account(s). *Bittner*, 749 F. Supp. 3d at 720. It does not matter "whether an individual maintains 5, 25, or 500 accounts," *id.*, and "[p]ersons having a financial interest in 25 or more foreign financial accounts need only note that fact on the form." 31 C.F.R. § 103.24(a) (2009); 31 C.F.R. § 1010.350(a) (2011). Thus, "it would make little sense to read § 5321(a)(5)(A) and (B)(i) to impose per-account penalties for non-willful FBAR violations when the number of foreign financial accounts an individual maintains has no bearing whatsoever on that individual's obligation to file an FBAR in the first place." *Bittner*, 749 F. Supp. 3d at 720.

The Government responds that it would be incongruous for "the violation underlying the willful penalty [to be] for undisclosed accounts, and the violation underlying the non-willful penalty [to be] for unfiled forms." (Gov't Opp. Mem. at 5–6.) The Court disagrees. The issue here is the manner in which the statutory cap for civil monetary penalties should be calculated. Concluding that the manner of calculating the statutory cap for a willful violation is different than for a non-willful violation does not mean that the conduct underlying the violation differs. Under both scenarios, the violation flows from the failure to file a timely and accurate FBAR. The only difference is that the manner for calculating the statutory cap for penalties for willful violations

involves an analysis that includes consideration of the balance in the accounts, while no such analysis is required for non-willful violations.

The Government also contends that interpreting Section 5321 as being form centric will yield absurd results because the reporter's liability might vary from account to account. Specifically, the Government posits that if an individual has a reasonable cause defense with respect to some accounts but not others, then that defense—in a form centric world—would be sufficient to alleviate the defendant of all liability, ostensibly because the defense would cover all accounts reported incorrectly on a single form. (Gov't Opp. Mem. at 4–5, ECF No. 67.) Again, the Court disagrees. Even if this hypothetical individual had reasonable cause not to disclose one or more accounts, absent reasonable cause for failing to report ALL accounts, the individual would still have violated Section 5314. In that case, the individual would be liable for civil monetary penalties because he does not have a complete reasonable cause defense as to every account that needed to be reported on the single form.

The Court further rejects the Government's construction because, if accepted, it could readily result in disparate outcomes among similarly situated people. For example, if penalties are assessed on a per account basis, the Court can easily envision a case in which two otherwise similarly situated non-willful violators are exposed to drastically different penalties simply because one violator has more financial accounts than the other. *E.g.*, *Bittner*, 749 F. Supp. 3d at 721 (providing hypothetical under which one violator is exposed to $20,000 in penalties while the other is exposed to $200,000). Perhaps more troubling is the prospect that under some circumstances, a *non-willful* violator could be exposed to a significantly higher penalty than a *willful* violator, *e.g.*, *id.* at 722 (providing hypothetical under which non-willful violator is exposed to $200,000 in penalties while willful violator with the same number of accounts and a higher

19

aggregate account balance is exposed to $100,000 in penalties). The Government has pointed to nothing in the legislative history of Section 5321(a)(5)(B)(i) that suggests that Congress intended such potentially disparate results.

The Government nonetheless urges that "[l]imiting the penalty to $10,000 per year, regardless of how many accounts are not reported would drastically limit the deterrent value of the penalty, as it would incentivize accountholders with large amounts of money in multiple overseas accounts to be less diligent in determining whether they are obligated to disclose such accounts." (Gov't Opp. Mem. at 7–8, ECF No. 67.) This argument strikes the Court as mere conjecture, especially in the context of non-willful violations. In any event, it is for Congress to decide, as a matter of policy, the penalty that may be imposed for non-willful violations, either as an incentive to report or to punish under-reporting.

For the first three decades of the Bank Secrecy Act, Congress decided that no penalty should be imposed for non-willful violations. *Kahn*, 2019 WL 8587295, at *4. Then, when Congress amended the Bank Secrecy Act to impose penalties for non-willful violations, it wrote a penalty provision that at first glance imposes a strict $10,000 cap. *See United States v. Horowitz*, 978 F.3d 80, 81 (4th Cir. 2020) (observing but not holding that "[a]ny person who fails to file an FBAR is subject to a maximum civil penalty of not more than $10,000"). And it did so with full awareness of the penalty provision for willful violations, which expressly uses the balance of the account as a benchmark for assessing the statutory cap. Absent more persuasive evidence to the contrary, the Court concludes that Congress did not intend for the statutory cap for non-willful violations to be determined on a per account basis.

In reaching this conclusion, the Court recognizes that the *Boyd* court endorsed the approach advocated by the Government. *Boyd* is not, of course, binding on this Court and the Court finds its

reasoning unpersuasive. In *Boyd*, the court acknowledged that Section 5321(a)(5)(B)(i) is "somewhat unclear as to whether the $10,000 negligence penalty applies per year or per account." *Boyd*, 2019 WL 1976472, at *4. The court then referred to the "balance in the account" language discussed above, and cited by the Government, and summarily concluded that "the Government has advanced the more reasonable interpretation." *Id.* As the *Bittner* court opined, this lack of explanation for "*why* the Government's interpretation was the more reasonable one . . . is quite unfortunate." *Bittner*, 749 F. Supp. 3d at 725 (emphasis in the original). This is true in part because it is unclear whether the *Boyd* court considered the general presumption that Congress acts intentionally when it includes disparate language in different sections of the same statute. *Russello*, 464 U.S. at 23. For this and other reasons, this Court respectfully declines to follow the approach taken in *Boyd*.

**Conclusion**

For the reasons set forth in this decision, the Government's motion for summary judgment [ECF No. 64] is GRANTED in part and DENIED in part. The Government's motion is GRANTED as to Kaufman's "reasonable cause" affirmative defense and therefore Kaufman's liability. To the extent the Government sought judgment in the amount previously assessed by the IRS, the motion is denied in light of the Court's ruling on the Defendant's motion for summary judgment.

Kaufman's motion for summary judgment [ECF No. 65] is GRANTED. Civil monetary penalties under 31 U.S.C. § 5321(a)(5)(B)(i) must be assessed on a per form basis and the civil penalties for which Kaufman may be liable is capped at $30,000.00.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of January 2021.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE